MAGDALENA MERCADO VEGA, demandante y recurrida, *v.* UNIVER-SIDAD DE PUERTO RICO, demandada y peticionaria.

*Número:* CE-90-597 *Resuelto:* 18 de abril de 1991

*Luis M. Vázquez Rodríguez*, abogado de la peticionaria; *Rafael J. Solá Díaz*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La recurrida, Magdalena Mercado Vega, presentó ante la Sala de San Juan del Tribunal Superior de Puerto Rico una demanda en contra de la Universidad de Puerto Rico (U.P.R.), de su entonces Presidente, Prof. Fernando E. Agrait, del Rector del Recinto de Río Piedras y de la Administradora Interina del Plan de Clasificación y Retribución de los Empleados No Docentes de la Universidad de Puerto Rico.

Alegó que mientras se desempeñaba como Secretaria Administrativa II realizó funciones propias de una Secretaria Adminis-

trativa V porque se desempeñaba como secretaria de la Decana Auxiliar de la Facultad de Ciencias Sociales del Recinto Universitario de Río Piedras, y no se le reclasificó como tal a pesar de que todas las demás secretarias de Decanos Auxiliares en las distintas facultades de dicho recinto gozan de la clasificación de Secretaria Administrativa V. Aduce que la negativa de la demandada a otorgarle esta última clasificación constituye una violación a la garantía constitucional de la igual protección de las leyes y, como colorario de ello, invoca el derecho a igual paga por igual trabajo.

Para justificar la falta de agotamiento de los remedios administrativos provistos por los reglamentos de la U.P.R., alegó *que no tenía remedio alguno adecuado en ley, que el proceso administrativo de la U.P.R. es lento e ineficaz y que sus reclamos constitucionales son de carácter irreparable que ameritan eludir el procedimiento administrativo universitario en primera instancia.*

Después de haber utilizado ambas partes los mecanismos de descubrimiento de prueba mediante interrogatorios escritos, requerimiento e inspección de documentos y la toma de una deposición a la demandante, la demandada presentó una moción para solicitar que se dictara sentencia sumaria, apoyada en el fundamento, entre otros, de que la reclamación de la demandante *no revelaba un agravio de patente intensidad que justifique obviar los procedimientos administrativos* disponibles en el sistema universitario.

La parte demandante se opuso a esta solicitud de sentencia sumaria y el tribunal a quo declaró no ha lugar la misma sin expresar las razones legales para ello. De esta determinación del tribunal es que recurre la demandada.

El pasado 5 de octubre expedimos una orden dirigida a la parte recurrida para que mostrara causa por la cual "no se deba expedir el auto solicitado y dictar sentencia revocatoria de la resolución dictada por el Tribunal Superior, Sala de San Juan, por razón de no haberse agotado los remedios administrativos provistos por el Reglamento sobre Procedimientos Apelativos de la

Universidad de Puerto Rico, así como por el Reglamento sobre la Junta de Apelaciones del Personal No Docente en el Sistema Universitario".

La recurrida ha comparecido en cumplimiento de la mencionada orden. A continuación resolvemos acorde con lo intimado.

I

El presente recurso no presenta controversia alguna de hechos. Estos, evidenciados por la parte recurrente a través de los documentos presentados en apoyo de su solicitud y no controvertidos por la parte recurrida, son los siguientes:(1)

1. La demandante, Magdalena Mercado Vega, comenzó a trabajar en el Recinto Universitario de Río Piedras en junio de 1980, como Secretaria Administrativa II.

2. Desde junio de 1980, la demandante ejerció las funciones de secretaria de la Sra. Rita M. Flores [D]e Jesús, Decana Auxiliar de Asuntos Estudiantiles de la Facultad de Ciencias Sociales del Recinto de Río Piedras.

3. El 2 de febrero de 1987, la Directora de la Oficina de Personal de la Administración Central de la Universidad de Puerto Rico, denegó una solicitud hecha por el Recinto de Río Piedras para reclasificar el puesto de la demandante a Secretaria Administrativa IV. Sin embargo, autorizó la reclasificación de la posición que ocupaba la demandante a la posición de Secretaria Administrativa III.

4. Esta reclasificación al puesto de Secretaria Administrativa III fue aprobada con carácter retroactivo al 1 de marzo de 1986.

5. El motivo por el cual no se reclasificó la posición que ostentaba la demandante al nivel de Secretaria Administrativa IV fue porque no tenía experiencia secretarial en funciones comparables al puesto de Secretaria Administrativa III de la Universidad de Puerto Rico, lo que constituye el requisito mínimo del nivel IV de la clase de Secretaria Administrativa.

6. Desde junio de 1985 hasta el 20 de septiembre de 1987 la demandante se desempeñó como Secretaria Administrativa III en la Oficina de Asuntos Estudiantiles.

_____

(1) Según aparecen reseñados en el alegato de la recurrente.

7. Una vez reclasificado el puesto ocupado por la demandante como Secretaria Administrativa III, el 16 de septiembre de 1987 ésta fue trasladada al Departamento de Geografía en el cual se desempeña como la secretaria del Director del Departamento.

8. La demandante estuvo de acuerdo y aceptó dicho traslado.

9. El 27 de marzo de 1987, la Directora de la Oficina de Personal del Recinto de Río Piedras, le remitió al Decano de la Facultad de Ciencias Sociales y a la demandante la determinación de la Administración Central en torno a la reclasificación de la demandante como Secretaria Administrativa III.

10. El 3 de abril de 1987 la demandante solicitó una revisión de dicha reclasificación pues entendía que era acreedora a que se le reclasificara como Secretaria Administrativa V.

11. Mediante comunicación de 5 de mayo de 1987 la Directora de la Oficina de Personal del Recinto de Río Piedras le informó a la demandante que de acuerdo a la Directora de Personal de la Administración Central, como Administradora del Plan de Clasificación y Retribución, la demandante no reunía los requisitos mínimos de experiencia específica en el puesto clasificado de Secretaria Administrativa IV, al cual fue recomendad[a] por el Recinto de Río Piedras y que por lo tanto tampoco era elegible a la reclasificación al nivel V de dicho puesto. A tales efectos, se señaló en la parte pertinente de la comunicación:

". . . Para Secretaria Administrativa V es necesario poseer cuatro años de experiencia secretarial en funciones similares o comparables a puestos de Secretaria Administrativa IV en la Universidad de Puerto Rico . . ."

Se expresó en dicha comunicación que se elevaría a la consideración de la Oficina Central de Personal para que determinara la similaridad o comparabilidad de las tareas que realiza con las de una Secretaria Administrativa V.

12. La posición de la Administración Central sobre el hecho de que la demandante no poseía la experiencia requerida para ser clasificada como Secretaria Administrativa V ya había sido expresada claramente en la comunicación de 2 de febrero de 1987 suscrita por la Directora de la Oficina de Personal de la Administración Central. (Escolios omitidos.) Anejo II, págs. 4–7.

Tampoco existe controversia alguna al efecto de que la recurrida no agotó los trámites administrativos provistos por los reglamentos universitarios para revisar la acción administrativa que fue objeto de la demanda presentada en este caso.

## II

■ La Regla 36.3 de Procedimiento Civil[2] dispone que se dictará sentencia sumaria inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiese, demuestren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. El propósito cardinal de esta regla es promover una solución justa, rápida y económica de la litigación, abreviando la disposición de pleitos que, por no presentar una controversia genuina de hechos, hace innecesario la celebración del juicio en su fondo. Usado con sabio discernimiento resulta ser un mecanismo valioso para descongestionar los calendarios judiciales. *Padín v. Rossi*, 100 D.P.R. 259, 263 (1971); *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963).

■ Una vez la parte promovente establece que no existe controversia sobre hecho material alguno, la parte promovida no puede cruzarse de brazos y descansar en sus alegaciones. Tiene que refutar los hechos alegados y sustanciar su posición con prueba tendente a establecer los hechos en controversia. Si se cruza de brazos, corre el riesgo de que le dicten sentencia en su contra sin la celebración de un juicio en su fondo. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 721 (1986). La recurrida se limitó en este caso a argumentar que las actuaciones de los recurrentes constituyeron sendas violaciones a las cláusulas constitucionales de igual protección de las leyes y de igual paga por igual trabajo, cuya sola alegación le dispensaba, según ella, de tener que agotar los remedios administrativos dispuestos por los reglamentos de la U.P.R. No refutó con prueba alguna los hechos alegados y establecidos por la parte recurrente.

La aplicabilidad de las garantías constitucionales invocadas por la recurrida, si se cumplió o no con las normas y los reglamentos de la U.P.R., o si se debieron agotar los remedios

---

[2] 32 L.P.R.A. Ap. III.

administrativos, eran cuestiones que únicamente requerían una determinación del derecho aplicable a la luz de los hechos presentados. Ausente una controversia real respecto a tales hechos, todo cuanto quedaba en este caso era estrictamente una cuestión de derecho que debió haber sido resuelta inmediatamente por el tribunal de instancia.

## III

En principio, la doctrina de agotar los remedios administrativos fue creada jurisprudencialmente[3] en respuesta a las necesidades de competencia administrativa y orden en los procedimientos. La misma se apoya en la premisa fundamental de que "nadie tiene derecho a auxilio judicial por un daño supuesto o inminente hasta haber agotado el remedio administrativo prescrito". (Traducción nuestra.) *Myers v. Bethlehem Corp.*, 303 U.S. 41, 50–51 (1938).

El propósito de esta doctrina es establecer el momento apropiado para que los tribunales intervengan en una controversia sometida previamente a la esfera administrativa. *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982); *Febres v. Feijoó*, 106 D.P.R. 676 (1978). Existen, además, importantes consideraciones de política pública detrás del requisito de agotar los remedios administrativos con anterioridad a la intervención del foro judicial.[4]

En *Vélez Ramírez v. Romero Barceló*, ante, pág. 728, reiteramos que la impugnación constitucional de actuaciones

---

[3] Este requisito fue recogido en la Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2172.

[4] A esos efectos, en *McKart v. United States*, 395 U.S. 185 (1969), se señalaron las siguientes:

1. Para evitar la interrupción prematura del procedimiento administrativo.

2. Para permitir a la agencia administrativa desarrollar el transfondo fáctico (*factual background*) que habrá de servir de fundamento a la decisión.

3. Para permitir que la agencia administrativa ejerza su discreción o aplique su conocimiento pericial (*expertise*).

4. Para mejorar la eficiencia del procedimiento administrativo.

administrativas está sujeta a la norma de agotamiento. En *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 438 (1983), este Foro expresó que "[e]l mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo. Aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo".

IV

La impugnación de la demandante está predicada en que la negativa de la U.P.R. a no reclasificar su puesto de Secretaria Administrativa II a Secretaria Administrativa V viola su derecho a gozar de la igual protección de las leyes garantizado por la Constitución de Puerto Rico,(5) porque realizaba funciones equivalentes a las funciones del puesto de Secretaria Administrativa V a pesar de no tener los años de experiencia en puestos inferiores exigidos como requisito mínimo para dicha posición. Deduce que por tal razón se violó su derecho a igual paga por igual trabajo reconocido por la Constitución del Estado Libre Asociado.

El Sistema de Personal de la U.P.R. está fundamentado sobre el sistema de mérito; principio que permea todo el sistema de personal del servicio público. La cláusula constitucional que garantiza la igual protección de las leyes no exige un trato igual a todos los ciudadanos, sino que prohíbe un trato desigual e injustificado. Una clasificación es válida a menos que sea claramente arbitraria y no pueda establecerse nexo racional alguno entre la misma y un interés legítimo del Estado. *Salas v.*

---

5. Para conservar los escasos recursos judiciales, debido a que la parte querellante puede resultar con éxito en la vindicación de sus derechos en el procedimiento administrativo, sin necesidad de intervención judicial.

6. Para darle una oportunidad a la agencia administrativa de descubrir y corregir sus errores.

7. Para evitar el posible debilitamiento de la efectividad de la agencia administrativa, mediante la tramitación frecuente y deliberada de los asuntos que a ésta atañen, en el foro judicial.

(5) Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1.

*Municipio de Moca*, 119 D.P.R. 625, 632 (1987); *Zachry International v. Tribunal Superior*, 104 D.P.R. 267, 276–277 (1975); 2 *Rotunda, Nowak y Young, Treatise on Constitutional Law: Substance and Procedure* Sec. 18.2 (1986).

■ Además de la cláusula sobre igual protección de las leyes, la Constitución del Estado Libre Asociado de Puerto Rico reconoce en su Art. II, Sec. 16, L.P.R.A., Tomo 1, entre otros, el derecho de todo trabajador a recibir igual paga por igual trabajo.[6]

■ Al adoptar dicha Sec. 16, la Convención Constituyente tuvo el propósito de concederle al trabajador puertorriqueño una protección social específica en la esfera obrero-patronal. La Convención Constituyente subrayó la alta dignidad del esfuerzo humano y destinó esta sección *al señalamiento de los derechos básicos del trabajador como tal.* 4 Diario de Sesiones de la Convención Constituyente 2573 (1951). Véase también, en otro contexto, el voto explicativo de conformidad emitido por el Juez Asociado Señor Rebollo López en *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35, 87–88 (1986).

■ "El principio de igual paga por igual trabajo interesa evitar discrímenes de una parte e irritaciones de otra, producidas cuando la compensación diferente *carece de justificación* frente a la igualdad de la labor rendida." (Énfasis suplido.) Diario de Sesiones, ante, pág. 2574. La principal inspiración de este mandato de justicia obrera fue la realidad imperante en la época de su adopción cuando a las mujeres con frecuencia se les pagaba menos aunque rindieran la misma o mayor labor que el hombre. Por tal

---

[6] Esta sección dispone:
"Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella, a recibir igual paga por igual trabajo, a un salario mínimo razonable, a protección contra riesgos para su salud o integridad personal en su trabajo o empleo, y a una jornada ordinaria que no exceda de ocho horas de trabajo. Sólo podrá trabajarse en exceso de este límite diario, mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley." Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 327.

motivo, "[e]l principio de igual paga por igual trabajo debe entenderse en su contexto histórico sin atribuírsele consecuencias extrañas a su propósito, a base de un literalismo desnaturalizador. No supone, por ejemplo, imposibilitar constitucionalmente los aumentos automáticos por años de servicio, o las vacaciones con sueldo a mujeres en época de gravidez y lactancia, o las bonificaciones especiales en consideración al número de dependientes o el pago por sobre el mínimo trabajo superior o por mayor producción", o la adopción de otras medidas dirigidas al mejoramiento del trabajador. Íd.

■ El propósito que persigue el sistema de clasificación y reclasificación de puestos de la U.P.R. al requerir del empleado un mínimo de experiencia en determinado puesto antes de su ascenso, transferencia o reclasificación es propiciar la adquisición de los conocimientos y destrezas que la nueva posición exige.(7)

■ Según señala la U.P.R. en su alegato, la clasificación de puestos es una prerrogativa gerencial, ya que se trata de un instrumento para la administración de los recursos humanos. Aunque la autoridad del patrono no es absoluta, ya que cada empleado tiene derecho a ser correctamente clasificado, le corresponde, sin embargo, a la autoridad nominadora la plena facultad de determinar cuáles son los puestos necesarios para realizar la misión de la agencia y cuáles son las funciones a realizar y los requisitos que debe tener el incumbente de un puesto específico. Por analogía, véase *De Paz Lisk v. Aponte Roque*, 124 D.P.R. 472 (1989). En virtud de ello, para que un puesto pueda ser

---

(7) Mediante comunicación de 5 de mayo de 1987, la Directora de la Oficina de Personal del Recinto de Río Piedras le informó a la demandante que, de acuerdo con la Directora de Personal de la Administración Central, como Administradora del Plan de Clasificación y Retribución de los Empleados No Docentes de la Universidad de Puerto Rico, la demandante no reunía los requisitos mínimos de experiencia específica en el puesto clasificado de Secretaria Administrativa IV al cual fue recomendado por el Recinto de Río Piedras y que, por lo tanto, tampoco era elegible a la reclasificación al nivel V de dicho puesto. A tales efectos, se señaló en la parte pertinente de la comunicación:

"Para Secretaria Administrativa V es necesario poseer cuatro años de experiencia secretarial en funciones similares o comparables a puestos de Secretaria Administrativa IV en la Universidad de Puerto Rico." *Exhibit* VIII.

reclasificado se requiere la acción afirmativa de la autoridad nominadora conforme a las normas previamente aprobadas por ésta.

 Reconocida la facultad de la U.P.R. para clasificar y reclasificar sus puestos al amparo de sus propias normas, la sola desviación o incumplimiento de las mismas no constituye de por sí un agravio de tal intensidad que revista carácter constitucional. *Snowden v. Hughes*, 321 U.S. 1, 15 (1944), opinión concurrente del Juez Frankfurter; *McKart v. United States*, 395 U.S. 185, 193–194 (1969); *Palmigiano v. Mullen*, 491 F.2d 977 (1er Cir. 1974); *First Fed. Savs. v. Asoc. de Condómines*, ante; *Pierson Muller I v. Feijoó*, 106 D.P.R. 838, 850–851 (1978); *Fund. Arqueológica v. Depto. de la Vivienda*, 109 D.P.R. 387, 392 (1980). No se ha alegado, ni hemos encontrado en este caso, hecho o circunstancia alguna de la cual podamos inferir la existencia de tal agravio. Hemos resuelto, y es doctrina firmemente establecida, que para que proceda un reclamo por la violación de un derecho garantizado constitucionalmente, a los fines de eludir el cauce administrativo, es necesario que se demuestre la existencia de un agravio de patente intensidad que justifique desviarse del mencionado cauce. *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763, 771 (1983); *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 208 (1982); *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272, 276 (1979); *Pierson Muller I v. Feijoó*, ante; *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977); *García Cabán v. U.P.R.*, 120 D.P.R. 167 (1987). Cuando la parte demandante demuestra indefinición y falta de concreción en el derecho constitucional invocado, no se justifica tal desvío. *Otero Martínez v. Gobernador*, ante, pág. 556.

## V

 A la fecha en que la U.P.R. tomó la determinación de la cual se acudió directamente al tribunal en este caso, el procedimiento a seguirse para revisar decisiones administrativas sobre el

personal no docente, relacionadas al principio de mérito, se regía por la Certificación del Consejo de Educación Superior Núm. 70, 1981–1982: Reglas para la Implantación y Administración del Plan de Clasificación para los Empleados No Docentes de la Universidad de Puerto Rico.[8]

El Art. 8 de las mencionadas reglas disponía lo siguiente:

8.0 *Procedimiento de Revisión*

8.1 El empleado que se crea adversamente afectado por una decisión del Administrador del Plan, en el origen a la (sic) implantación del Plan de Clasificación —1 de julio de 1977—, podrá elevar una petición de revisión al Director de Personal de su unidad, a través de su supervisor inmediato, dentro de los siguientes diez (10) días a partir de la fecha en que se le notifica el cambio. Igual remedio podrá solicitar el supervisor que se entienda adversamente afectado por una decisión del Administrador del Plan respecto a un puesto vacante bajo su jurisdicción.

. . . . . . . .

c) Si la decisión no resultare satisfactoria para la parte interesada, podrá apelar ante la Junta de Apelaciones del Plan de Clasificación conforme a lo establecido en la Sección 9 de estas Reglas. Anejo XV, págs. 233–234.

El Art. 9 del referido reglamento expresamente creó la Junta de Apelaciones del Plan de Clasificación sobre las áreas esenciales del principio del mérito, estableciendo, a su vez, los procedimientos apelativos ante ella.

Por último, el Art. 10 de la Certificación Núm. 70 proveía para la revisión por el Consejo de Educación Superior de la decisión que emitiera la Junta.

■ Vemos, pues, que el esquema apelativo antes descrito establecía un mecanismo que de su faz resultaba ser eficaz para la

---

(8) Ésta quedó derogada por el Art. 12 de la Certificación Núm. 80, Serie 1988–1989. En los demás aspectos del principio de mérito, como son la retención, la selección, el adiestramiento, etc., se regía por el Reglamento sobre Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico, Certificación Núm. 138, 1981–1982, según enmendada, del Consejo de Educación Superior. Todas estas controversias sobre el principio de mérito del personal no docente se dilucidan en la actualidad bajo el organismo especializado de la Junta de Apelaciones del Personal No Docente en el Sistema Universitario, en conformidad a la Certificación Núm. 80. Véanse: Arts. 1, 6 y 12 de dicho reglamento.

revisión expedita de la actuación impugnada en este caso. En virtud del mismo, la demandante no estaba privada de remedio alguno como alega en su demanda. Por el contrario, dicho remedio administrativo estaba accesible a la demandante como foro adecuado y primario para dilucidar, en primera instancia, la impugnación a la acción tomada en su contra por las autoridades universitarias. Ninguna prueba ofreció ésta para demostrar que en realidad dicho esquema era "uno ineficaz y lento", según expuso en sus alegaciones.

## VI

A pesar de la conclusión a que hemos llegado nos percatamos de que a la recurrida, quien no estuvo representada por abogado en la gestión que realizó ante las autoridades universitarias para obtener la clasificación que de su puesto pretende, no se le advirtió de su derecho a apelar ante el organismo administrativo correspondiente de la acción tomada en su contra. Dicha omisión tal vez explica su insistencia en obtener una decisión favorable del mismo funcionario que emitió el dictamen en lugar de acudir al remedio apelativo provisto por la reglas del Consejo de Educación Superior contenidas en la Certificación Núm. 70, ante. Por lo tanto, se impone que propiciemos una oportunidad a la recurrida para que ésta pueda agotar el referido trámite administrativo cuya falta de agotamiento le impide acudir directamente al foro judicial de la acción que le fue desfavorable. Véase, por analogía, *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53, 58 (1978).

Tampoco hemos pasado por alto el tiempo prolongado que tomó el trámite burocrático en este caso, mas esa sola circunstancia no hace inefectivo el proceso administrativo. No se ha evidenciado que dicho factor o alguno otro justifique la preterición de los canales administrativos. Al referir a la recurrida a dicho foro lo hacemos confiados en que el trámite habrá de desarrollarse en forma expedita. Sin embargo, cualquier dilación indebida o injustificada que torne inefectivo el mismo podrá

*entonces* encontrar reparo en el ámbito judicial. Véanse: *Rivera v. E.L.A.*, 121 D.P.R. 582 (1988); *Vda. de Iturrequi v. E.L.A.*, 99 D.P.R. 488, 491 (1970). Después de todo tenemos que presumir que la U.P.R. tiene tanto interés como la demandante recurrida en resolver cuanto antes la controversia existente entre ambas a los fines de propiciar y conservar el clima de paz y justicia laboral a que aspiran la propia Universidad, sus empleados y nuestra ciudadanía.

Toda vez que se cometió el error señalado, *se expide el auto solicitado y se revoca la resolución del Tribunal Superior, Sala de San Juan, mediante la cual denegó la solicitud de sentencia sumaria instada por la parte recurrente. En su lugar, se dictará sentencia que desestima la demanda presentada por la parte recurrida por no haber cumplido con el requisito de agotar los remedios administrativos provistos por los reglamentos de la Universidad de Puerto Rico, y se concede a dicha recurrida un término de treinta (30) días, contado a partir de la fecha de la devolución del mandato en este caso, para recurrir, si así lo interesa, de la negativa a reclasificar su puesto como Secretaria Administrativa V ante la Junta de Apelaciones del Personal No Docente en el Sistema Universitario, conforme al reglamento establecido en la Certificación Núm. 80, Serie 1988–1989, del Consejo de Educación Superior.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado Señor Negrón García emitió opinión disidente.

—O—

Opinión disidente del Juez Asociado Señor Negrón García.

"El derecho es plenario pero no hermético. Muchos de sus elementos son, diríamos, *abiertos* hacia la vida. El derecho, se ha dicho, está sometido a un trasiego constante con la vida." (Énfasis en el original.) E.J. Couture, *Estudios de Derecho Procesal Civil*, Buenos Aires, Ed. Depalma, 1978, T. III, pág. 44.

La mayoría se aparta de esa visión. Como demostraremos, cinco (5) años más tarde le niegan a la demandante, Sra. Magdalena Mercado Vega, la oportunidad de dilucidar *prontamente* en el foro *judicial* sus reclamos. Todavía insisten en un ritual injusto. Aun cuando reconocen que no fue advertida de su derecho a apelar y admiten "el *tiempo prolongado* que [ha tomado] el trámite burocrático en este caso" —(énfasis suplido) opinión mayoritaria, pág. 289— la condenan a la futilidad de agotar el foro administrativo universitario. La única conclusión que cabe es que se ha *revocado* esa doctrina de derecho administrativo. Además, como *agravante*, se apartan de la norma de que no procede una sentencia sumaria si existe controversia legítima de hechos. Finalmente, llegan al *extremo* de adelantar innecesariamente criterios jurídicos y de hacer pronunciamientos que, para todo propósito ulterior, representan realmente una *decisión adversa* de este Foro contra la señora Mercado Vega. Bajo los mismos, no tendrá ella la más mínima posibilidad de prevalecer. Para su causa, LA SENTENCIA ES DE *MUERTE*.

Expongamos integralmente los hechos. En esa tarea, distinto a la mayoría, no habremos de circunscribirnos a los "reseñados en el alegato de la recurrente" Universidad de Puerto Rico (U.P.R.). Rechazamos esa metodología decisoria pues los mismos representan una versión unilateral inaceptable. Es menester, pues, tomar en cuenta aquellos hechos y datos adicionales que se desprenden de los documentos presentados por ella en instancia oponiéndose a la sentencia sumaria, los cuales obviamente el juzgador tomó en cuenta al rechazar en *dos* (2) ocasiones las pretensiones de la U.P.R.

I

Hace diez (10) años —junio de 1980— la señora Mercado Vega, en ascenso, fue clasificada Secretaria Administrativa II. En esa condición comenzó a trabajar como secretaria de la Sra. Rita M. Flores De Jesús, Decana Auxiliar de Asuntos Estudiantiles de la Facultad de Ciencias Sociales del Recinto Universitario de Río Piedras.

En octubre de 1980 le comunicó verbalmente a la señora Flores De Jesús, como supervisora inmediata, su preocupación de que las funciones que ella realizaba correspondían más bien a las de una Secretaria Administrativa V. Ante este señalamiento, la señora Flores De Jesús le indicó que el trámite de su reclasificación sería sometido oportunamente. Transcurrió el tiempo. El 14 de junio de 1983 reiteró *por escrito* su solicitud de que se revisara su clasificación. Con su pedido sometió el cuestionario de reclasificación. Seis (6) meses después, la señora Flores De Jesús remitió el asunto a la consideración de la Decana, Sra. Juana Almeyda.

Continuó transcurriendo el tiempo. El 23 de abril de 1984 la señora Flores De Jesús refirió la cuestión al Director de la Oficina de Personal, Sr. Juan G. Vega.

Durante todos estos años, la señora Mercado Vega siguió realizando, según sus alegaciones, las labores de Secretaria Administrativa V, aunque cobraba el sueldo de Secretaria Administrativa II. El 3 de diciembre de 1985 pidió que se *acelerara el proceso*. El 18 de diciembre se le notificó "que su caso está pendiente para estudio".

*Pasó el tiempo*. Ella continuó inquiriendo sobre su solicitud en la Oficina de Personal. Nuevamente, el 31 de octubre de 1986, ante la demostrada ineficiencia administrativa, manifestó su preocupación y, además, expuso el trato desigual que se le brindaba a su solicitud. Aludió a varios casos iguales al suyo, sometidos conjuntamente *y resueltos favorablemente con anterioridad.*

Así las cosas, el 27 de enero de 1987 volvió a pedir acción. Finalmente, el 2 de febrero de 1987, la Oficina *Central* de Personal le notificó que, efectivo el 1ro de marzo de 1986, quedaba reclasificada como Secretaria Administrativa III.

El 3 de abril de 1987 apeló esa determinación. Invocó su derecho constitucional de igual paga por igual trabajo y presentó evidencia de su experiencia para cualificar. El 5 de mayo de 1987 le contestaron que sus planteamientos eran improcedentes, pues carecía de experiencia (4 años) en funciones correspondientes al puesto de Secretaria Administrativa IV. Se le informó que su

señalamiento sobre la norma de reclutamiento había sido elevado a la Oficina *Central* de Personal. El 16 de septiembre de 1987 fue trasladada al Departamento de Geografía como secretaria del Director del departamento.

*En vista del largo tiempo transcurrido y de que su reclamo fue desatendido, el 9 de noviembre de 1987 demandó judicialmente a la Universidad de Puerto Rico.*

## II

Los antecedentes y trámites administrativos expuestos nos impiden refrendar la opinión mayoritaria. Tres (3) fundamentos animan nuestra conciencia judicial.

*Primero*, si algo reflejan los autos, es el *vía crucis burocrático* que durante cinco (5) años ha tenido que soportar la señora Mercado Vega. La mayoría acepta esta dolorosa realidad; sin embargo, le dicen que debió esperar antes de acudir a los tribunales. ¿Cuánto tiempo más?

Estamos ante un caso claro en que no es procedente invocar la doctrina de agotamiento de los remedios administrativos. Para el 5 de mayo de 1987 todavía estaba sin resolverse su solicitud, pues parte *integral* de la misma —el planteamiento sobre la norma de reclutamiento— fue referido a la Oficina Central de Personal. ANTE LA DILACIÓN EXCESIVA HABIDA, EL IMPONERLE ESE REQUISITO ES EXIGIRLE UNA GESTIÓN INFRUCTUOSA, POCO REMEDIAL E INJUSTA.

*Segundo*, distinto a la conclusión mayoritaria, los documentos y alegaciones de la señora Mercado Vega, *PRIMA FACIE* CONFIGURAN UNA CONTROVERSIA LEGÍTIMA DE HECHOS QUE IMPIDE *DICTAR SENTENCIA SUMARIA*. De ser ciertos, reflejarían un tratamiento violatorio a la igual protección de las leyes —Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1— y a su derecho a recibir igual paga por igual trabajo —Art. II, Sec. 16, Const. E.L.A., *supra*— que debe ser de inmediato reivindicado judicialmente.

Y *tercero*, OBJETAMOS QUE LA MAYORÍA, PARA ARRIBAR A SU CONCLUSIÓN, *A PRIORI* HAYA EVALUADO Y

PREJUZGADO EN CONTRA DE LA CAUSA DE LA SE-
ÑORA MERCADO VEGA. Esa es la única conclusión aceptable
una vez examinamos los pronunciamientos mayoritarios esboza-
dos en las págs. 284–287, a saber, inaplicabilidad al caso de las
cláusulas constitucionales sobre igual protección de las leyes (Art.
II, Sec. 7, Const. E.L.A., *supra*) e igual paga por igual trabajo
(Art. II, Sec. 16, Const. E.L.A., *supra*); propósitos del sistema de
clasificación y reclasificación universitaria, y amplia prerrogativa
gerencial. Más aún, si alguna duda hubiese, la misma queda
despejada cuando de manera terminante *deciden* que "[n]o se ha
*alegado*, ni hemos *encontrado* en este caso, hecho o circunstancia
alguna de *la cual podamos inferir la existencia de tal agravio* [en
la reclasificación]". (Énfasis suplido.) Opinión mayoritaria, págs.
286–287.

¿Qué justificación hay para prejuzgarle adversamente el caso?
¿Por qué semejante trato? Al agravio y violación del debido
proceso de ley administrativo hemos añadido el judicial. Si la
mayoría está así persuadida, ¿por qué jugar judicialmente al gato
y al ratón? ¿No sería mejor directamente decirle que ellos
entienden que su acción no puede prosperar y, sin vacilaciones,
desestimársela? De lo contrario, ¿no hubiese sido más justo
haberle dado una oportunidad real de demostrar los méritos de su
causa en una vista judicial evidenciaria?

Nunca debemos eregir obstáculos procesales de naturaleza
administrativa para cerrar nuestras puertas y derrotar reclamos
de orígenes constitucionales. *Pierson Muller I v. Feijoó*, 106
D.P.R. 838, 851 (1978). A fin de cuentas, la aplicación de normas de
agotamiento administrativo son de conveniencia y no correspon-
den a una ciencia exacta, divorciada de la vida humana. A LA
ABUSIVA BUROCRACIA UNIVERSITARIA, AÑADIMOS LA
JUDICIAL.

Confirmaríamos el dictamen del Tribunal Superior, Sala de
San Juan, que se negó a desestimar por la vía sumaria la demanda
de la señora Mercado Vega.