# 2000 DTA 119

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA**

MUNICIPIO DE CAGUAS, ET ALS.
Recurridos

v.

AT & T WIRELESS PCS, INC., ET ALS.
Peticionarios

Núm. KLCE-99-01255

San Juan, Puerto Rico, a 29 de febrero de 2000

Panel integrado por su Presidenta, la Juez Rivera de Martínez,
y los Jueces Colón Birriel y Soler Aquino

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La peticionaria Telecorp Communications, Inc., (en adelante *"TCI")* nos solicita la expedición de un auto de *certiorari* para que revoquemos una Resolución Enmendada, emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas. El referido dictamen declaró ha lugar la solicitud de *injunction* preliminar presentada por el Municipio de Caguas, representado por su Alcalde William Miranda Marín y el Comite de Residentes del Barrio Beatriz, Sector Muñoz Grillo de dicho Municipio (en adelante los *"recurridos")*. Se ordenó se paralizara todo tipo de construcción y de movimientos de vehículos y objetos pesados, en el solar objeto de controvesia, hasta la celebración del juicio en sus méritos, a los fines de no convertir en académica la sentencia que finalmente pudiera reacaer. Los recurridos se opusieron a la expedición del auto mediante su escrito de 18 de noviembre de 1999.

Con el beneficio de los escritos, resolvemos, no sin antes hacer un breve resumen de lo acontecido en el foro de instancia. Veamos.

## II

Los recurridos presentaron, el 27 de septiembre de 1999, una demanda contra TCI y otros. Solicitaron se emitiera un *injunction* preliminar y permanente prohibiéndoles continuar con la construcción y/o funcionamiento de una torre de comunicaciones; que se ordenara la remoción de todos los objetos y materiales que se utilizaron en dicha contrucción y se reinstalara el solar a su estado original a los fines de evitar que ocurrieran deslizamientos de tierra; se declarara que la parte demandada, TCI y la Administración de Reglamentos y Permisos (en adelante *"ARPE"*) a través de su administrador, no cumplieron con los derechos constitucionales de los recurridos, que rigen en la consideración de permisos en procesos adjudicativos, al no notificar a éstos del proceso llevado a cabo y con ello negarles participación en el mismo; se declarara inconstitucional, de su faz y en su aplicación, la Sección 3.02, Inciso 3, del Reglamento de Emergencia para Proyectos de Construcción de Facilidades de Telecomunicaciones y/o la Sección 104.03, Inciso (1) Tópico 15 del Reglamento Núm. 4 de la Junta de Planificación de Puerto Rico, por violentar el debido proceso de ley e igual protección de las leyes de los recurridos; impusiera a TCI la obligación de indemnizar a los recurridos, los daños y perjuicios ocasionádosele, además, de las costas, gastos y honorarios de abogados, y cualquier otro remedio en ley y/o equidad que se estimare fuera necesario. ■

Los recurridos fundamentaron su razón de pedir, esencialmente en: (1) la supuesta ilegalidad del permiso de construcción, concedido por ARPE, y (2) a la ocurrencia de alegados daños irreparables, a algunos de ellos.

El 29 de septiembre de 1999, el foro recurrido emitió una Orden señalando una vista para el lunes 4 de octubre de 1999, a los fines de dilucidar el interdicto solicitado. ■ El día de la vista, TCI compareció y presentó una Moción Solicitando Desestimación al amparo de la Regla 10.2(1) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. ■ Fundamentó su posición en que el remedio solicitado por los recurridos resultaba ser tardío y académico, por razón de que la torre de comunicaciones ya había sido construida y el proyecto en general se había terminado; en cuanto a la oposición de los recurridos a la ubicación de la torre, éstos estaban obligados a agotar los remedios administrativos.

Por su parte, los recurridos presentaron un Memorando en Apoyo a Solicitud de *Injunction* y en oposición a Moción de Desestimación. ■

Así las cosas, las partes se reunieron en cámara y expusieron sus respectivas posiciones. Concluidas las argumentaciones, se declaró No Ha Lugar la solicitud de desestimación de TCI y se dió comienzo a la vista evidenciaria. En la vista, declararon por los recurridos Margarita Alicea Sánchez y Rosa Delgado Santiago, vecinas del solar objeto de la construcción en controversia.

En síntesis, el testimonio de Margarita y Rosa, mediante examen directo y contrainterrogatorio, estableció que:

*"-residían cerca de la colindancia con la propiedad objeto de la construcción desde hacía bastante tiempo;*

*-siempre que llueve en el área donde residen los recurridos, se forman correntones de agua y ocurre algún desprendimiento de tierra, aun cuando no se estuviera realizando construcción alguna en dicho lugar;*

*-nunca tomaron acción ni se incomodaron hasta que se enteraron que lo que se construiría en la propiedad sería una torre de telecomunicaciones y no una residencia, los trabajos estaban "bien adelantados, pasados cerca de 17 días de comenzada la construcción";*

*-mientras creían que las obras de construcción y el movimiento de camiones y máquinas en el lugar era para la construcción de una residencia, no tuvieron objeción a los eventos;*

*-sentían temor y depresión con la torre debido a que les habían dicho que podía causar cáncer y otras enfermedades, y que se podía caer;*

*-Doña Rosa notó por primera vez algunas grietas en su residencia y (sin apoyo pericial alguno y mediando especulación) ella entendía que se debió al paso de camiones en el predio adyacente (no presentó fotos a esos efectos);*

*-la maquinaria y equipo pesado utilizado para la excavación, movimiento de tierra, transporte e instalación de la torre, al presente no están en la propiedad, ya que fueron removidos del lugar hace algún tiempo al concluir la construcción; y*

*-la torre ya estaba construida, erecta y completada."*

Los recurridos no presentaron prueba pericial, testifical o documental, ni de ninguna otra índole, sobre el alegado peligro que representaba la torre en relación con la supuesta susceptibilidad del deslizamiento del terreno. Su prueba se fundamentó en que los temores de los recurridos estaban basados en comentarios escuchados de terceros.

Terminada la prueba de los recurridos, TCI solicitó la desestimación de la demanda *("non suit"),* bajo la Regla 39.2(c) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, alegando que la prueba presentada era insuficiente en derecho, para cumplir con los criterios establecidos por nuestro Tribunal Supremo, a los fines de conceder el remedio extraordinario de *injunction* preliminar. Además, alegaron que dicha prueba era teórica y especulativa. La desestimación fue declarada No Ha Lugar, por lo que se continuó con la vista.

Por TCI declararon, Jesús Pardo y María Vázquez, testigos de hechos. Además, se admitió prueba documental, incluyendo fotografías, tomadas antes y después de la construcción, y una certificación Jurada del ingeniero Geotécnico, Aniel Gillasca. Mediante el testimonio de Jesus y María se estableció, en esencia, que:

*"- nunca ocurrió desprendimiento de terreno alguno en la propiedad como resultado de la construcción, a pesar de llover 5 ó 6 veces durante dicho período;*

*- ningún camión o vehículo chocó, rozó o tocó la verja de la colindancia de los demandantes y que ésta se encuentra en las mismas condiciones en que se encontraba antes de la construcción (quedando establecido que el camino de acceso por donde transitaban los camiones se encuentra a 8 ó 10 pies de la colindancia en su parte más cerca a la misma);*

*- la construcción está prácticamente terminada, restando sólo la pavimentación del camino de acceso a la propiedad;*

*- TCI sufriría cuantiosos e incalculables daños de paralizarse la conclusión de la obra y la operación de la torre, ya que se frustraría la operación de su red en el área y el servicio de telefonos portátiles a miles de usuarios;*

*- el terreno objeto del litigio está oficialmente catalogado como uno que no es de alta susceptibilidad de desprendimiento. Certificación Jurada de Aniel Grillasca.*

*- Además, como parte del proceso para conceder el Permiso de Construcción por ARPE, TCI encomendó a peritos y sometió a ARPE estudios geológicos y diseños estructurales para la torre que aseguran la estabilidad de la misma y del terreno. Véase estudio geológico del Ing. Grillasca, estipulado por las partes;*

*- que en ausencia de la paralización solicitada, se proyectaba tener la torre en operación en dos semanas.*

La prueba documental ofrecida por TCI y admitida por el foro recurrido, alguna de entre las cuales se marcó como prueba conjunta de las partes, se detalla a continuación:

*i) Exhibit 1 Coniunto - Grupo de fotografías (6).*

*ii) Exhibit 2 Coniunto - Grupo de fotografías (6). Véase Apéndice, págs. 31-32, de la petición.*

*iii) Exhibit 3 Conjunto - Grupo de fotografías (6).*

*iv) Exhibit 4 Conjunto - "Subsoil Exploration and Geotechnical Engineering Report", fechado 26 de julio de 1999, preparado por el Ingeniero Geotécnico Aniel Grillasca de Geotechnical Engineering Services, PCS.*

*v) Exhibit 1 de TCI - Notice to Proceed, fechado 9 de septiembre de 1999.*

*vi) Exhibit 2 de TCI. - Permiso de Contrucción, expedido por ARPE el 10 de septiembre de 1999. En la vista TCI ofreció una certificación jurada del Ingeniero Aniel Grillasca fechada 2 de octubre de 1999, la que no fue admitida por el foro de instancia."*

Concluida la vista, como hemos mencionado, el 4 de octubre de 1989, se emitió una sentencia, mediante la cual se ordenó la paralización de todo tipo de construcción y de movimiento de vehículos y objetos pesados, en el solar objeto de la controversia, hasta la celebración del juicio en sus méritos. Posteriormente, el 6 de octubre de 1999, se notificó una Resolución Enmendada, a los fines de aclarar que la Sentencia emitida el 4 de octubre, era en realidad una resolución.

Alega TCI que, al presente, el proyecto de telecomunicaciones está esencialmente finalizado, pero no puede operarse por razón del *injunction* preliminar emitido, que de sostenerse, constituiría un abuso de discreción por parte del foro recurrido.

Inconforme, TCI solicitó expidiéramos un auto de *certiorari* y dejáramos sin efecto la Resolución Enmendada y desestimáramos la demanda. Adujo que el foro recurrido erró: a) al decretar un *injunction* preliminar y no aplicar la doctrina de agotamiento de remedios administrativos, y b) al paralizar la conclusión de la obra a los fines de aplacar meros temores infundados de los recurridos y sin cumplirse con los criterios requeridos en ley para autorizar el referido *injunction*.

### III

Empezaremos con la discusión del primer error, es decir, la procedencia del *injunction* preliminar y la no aplicación de la doctrina de agotamiento de remedios administrativos. Veamos.

En la Sección 4.3 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. § 2173, se recojen las ocasiones en que un litigante está exento de cumplir con la doctrina conocida como *"agotamiento de remedios administrativos"*. Esta sección lee como sigue:

*"§ 2173. Agotamiento de remedios administrativos; relevo*

*El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa."*

Con el propósito de intentar demostrar que satisfacían alguna de las circunstancias dispuestas en la Sección 4.3, *supra*, y, por tanto, exentos de cumplir la norma de agotamiento, los recurridos trajeron a la atención del foro recurrido diversos factores y argumentos. A esos efectos, alegaron en su demanda que debido a las actuaciones de

los demandados:

*"Se han causado y se están causando daños irreparables a los demandantes (los recurridos) al estar sus vidas en constante peligro por los deslizamientos de terrenos ocurridos y los que acaecerán, debido a las lluvias que están cayendo actualmente y debido a la remoción ilegal de corteza terrestre... al actuar de forma irresponsable y negligente, sin tomar en consideración la vida y seguridad de los demandantes y al no tener los correspondientes permisos del Departamento de Recursos Naturales. Se les ha privado de disfrutar del derecho de propiedad que les reconoce la Constitución de Puerto Rico debido a las actuaciones ilegales ...".*

Indicaron, además, que el movimiento de los camiones que pasan chocando contra las verjas de sus viviendas hacen que los escombros y árboles caigan dentro de sus propiedades, lo que hace que continuamente se les causen problemas de salud a ellos y sus familiares.

Argumentaron que TCI fue autorizada por ARPE a construir la torre de telecomunicaciones en un terreno adyacente a los de ellos, el cual es susceptible a deslizamientos; que el permiso de construcción que ARPE le concedió es ilegal porque la reglamentación a virtud del cual fue concedido (Reglamento de Emergencias para Proyectos de Construcción de Facilidades de Telecomunicaciones y/o la Sección 104.03(1), *supra*, es inconstitucional de su faz y en su aplicación, por cuanto los discrimina, por razón de que dicho reglamento no prohibe la construcción de torres de comunicaciones a menos de 50 metros, cuando se refiere a residencias, mientras que la prohibe con respecto a planteles escolares, violándose así sus derechos constitucionales al debido proceso de ley e igual protección de las leyes; alegaron también la inconstitucionalidad del referido Reglamento de Zonificación Núm. 4, por no requerir notificación ni participación a personas interesadas en el proyecto.

Por último, propusieron su exclusión del trámite administrativo, aduciendo su lentitud e incertidumbre y su inaplicabilidad cuando se trata de demandantes que no fueron partes en el procedimiento administrativo.

En principio, la doctrina de agotar los remedios administrativos fue creada jurisprudencialmente ▇ en respuesta a las necesidades de competencia administrativa y orden en los procedimientos. La misma se apoya en la premisa fundamental de que *"nadie tiene derecho a auxilio judicial por un daño supuesto o inminente hasta haber agotado el remedio administrativo prescrito".* (Traducción nuestra) *Myers v. Bethehem Corp.*, 303 U.S. 41, 50-51(1938). *Mercado Vega v. UPR*, 128 D.P.R. 273, 282 (1991).

Del examen de las alegaciones sobre los posibles daños que la no paralización de la obra podría causar a los recurridos, se desprende que dichas alegaciones versan sobre daños hipotéticos y especulativos. En el estado en que se encuentra la obra, los alegados riesgos que reclamaron los recurridos no constituian los daños verdaderos e irreparables requeridos para propósitos del *injunction* solicitado, por lo que entendemos era improcdente la solicitud de éstos. Aun en el supuesto de que la torre de telecomunicaciones en controversia pudiera adolecer de algún vicio que propende a su colapso, cerca de las propiedades de los demandantes, por su pericia, ARPE está en mejor posición que el foro recurrido para hacer esa determinación y facultada para ordenar los remedios apropiados. Pensar y actuar de otro modo, constituye una invación y usurpación de la labor administrativa competente que, por razón de su vasta experiencia y conocimientos especializados, tiene el deber ministerial de intervenir y adjudicar, conforme a lo solicitado (realizar las gestiones necesarias para determinar la adecuacidad y conveniencia de localizar en predios particulares una torre de telecomunicaciones). La creación de las distintas agencias administrativas y la delegación a éstas de poderes cuasijudiciales, tienen el propósito de proveer un sistema adjudicativo económico, rápido y práctico. Su fin último es hallar la verdad y hacer justicia a las partes, mediante un proceso ágil y sencillo que propicie su uso eficiente por personas legas. *López Santos v. Asociación de Taxis de Cayey*, opinión de 16 de diciembre de 1996, **96 J.T.S. 161**, a la pág. 400. Entendemos que los daños que los recurridos trajeron a la atención del foro recurrido no satisfacían los criterios necesarios para justificar la intervención judicial del foro recurrido.

Los argumentos sobre la inconstitucionalidad del Reglamento de Zonificación, *supra*, no puede prevalecer. Como indicáramos, los recurridos plantearon que la Sección 104.03(1), *supra*, es inconstitucional, en cuanto

impide la ubicación de las torres de telecomunicaciones a cierta distancia de los planteles escolares, pero no así cuando se trata de zonas residenciales.

En el caso Guadalupe, *supra*, nuestro Tribunal Supremo enfatizó que la mera presentación de un argumento constitucional no justifica la exclusión del trámite administrativo. Este Tribunal aprecia que esa decisión le es particularmente aplicable al argumento constitucional planteado por los recurridos. Se trata de uno al que le es aplicable la norma de agotamiento de remedios administrativos, más aún cuando es la agencia la mejor preparada para dar explicaciones, de existir éstas, que apoyen la distinción reglamentaria impugnada por tener el *"expertise"* necesario.

Tampoco le asiste la razón a los recurridos en su argumento de que no es necesario agotar remedios cuando la parte que comparece al tribunal no ha participado en el procedimiento. Nuestro Tribunal Supremo ya se ha expresado en el caso específico de la aplicabilidad de la doctrina de agotamientos a los procedimientos ante la consideración de ARPE. Las personas perjudicadas por una deteminación tomada por ARPE, en procedimientos en el que ellas no fueron partes, no están libres de recurrir directamente al foro administrativo. El recurso que les asiste es la intervención y solicitud de reconsideración ante la propia agencia. *Sociedad de Residentes v. Montebello Development Corp.*, Opinión de 2 de mayo de 1995, **95 J.T.S. 54**, a las págs. 860-61.

El procedimiento para obtener licencias, franquicias, permisos y endosos gubernamentales está regido por lo dispuesto en el subcapítulo V de LPAU, que comienza en la Sec. 5.1 de esa ley, 3 L.P.R.A. §2181. Aunque ese procedimiento no contempla el mecanismo de la intervención, ese recurso procesal está reglamentado y reconocido en los procedimientos adjudicativos, 3 L.P.R.A. §2155, donde expresamente se dispone la intervención para beneficio de la *"persona que tenga interés legítimo en un procedimiento adjudicativo ante una agencia"*. Según resuelto, el procedimiento para adquirir un permiso en ARPE, es un procedimiento adjudicativo. *Luán Investment Corp. v. Román*, 125 D.P.R. 533, 547 (n.2) (1990).

Por su parte, el Reglamento de Procedimientos Adjudicativos aprobado por ARPE, a tenor con los requerimientos de LPAU, no requiere la notificación a personal alguna, respecto a las solicitudes de permisos como las que motivan la reclamación de los recurridos. Sin embargo, la Sección 4. 01 del citado reglamento (también cumpliendo con LPAU) específicamente autoriza la solicitud de intervención a *"cualquier persona que tenga un interés legítimo en el procedimiento adjudicativo"*. Es por dicho ordenamiento que en *Asociación de Residentes Parque Montebello v. Montebello Development*, **95 J.T.S. 54,** nuestro Tribunal Supremo le dio una aplicación cabal al recurso de intervención, resolviendo que ése es el procedimiento a utilizarse por personas afectadas por la concesión de un permiso en ARPE, que no fueron partes originales en el procedimiento. Al así resolver, nuestro más alto foro recalcó que procedía acoger esa intervención en la agencia, a pesar de que al presentarse la solicitud ya hubiera transcurrido el término jurisdiccional para solicitar reconsideración de la determinación administrativa.

Concluimos de todo lo anterior que los recurridos no pueden obviar los remedios administrativos. Estos proveen a las partes la oportunidad necesaria para comparecer y ser oídos. Nuestro ordenamiento les requiere que agoten los remedios administrativos y allí encausar sus reclamos. Determinamos que bajo los hechos del presente caso es de aplicación la doctrina de agotamiento de remedios administrativos, por lo cual, el primer error fue cometido.

Habida cuenta de la anterior determinación, huelga la discusión del segundo error.

En mérito a lo expuesto, expedimos el auto solicitado, dejamos sin efecto el *injunction* preliminar concedido y ordenamos la desestimación de la demanda presentada por los recurridos.

Notifíquese inmediatamente.

Lo pronunció el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General