Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| SHEILA T. HODGE NARVÁEZ<br><br>Recurrente<br><br>v.<br><br>OFICINA DEL INSPECTOR GENERAL DE PUERTO RICO<br><br>Recurrido | KLRA202400124 | *Revisión* procedente de la Oficina del Inspector General de Puerto Rico<br><br>Caso Núm. 2022-RH-0010<br><br>Sobre: Reconsideración; Ley Núm. 15-2017, según enmendada, conocida como la "Ley del Inspector General de Puerto Rico", Art. XIV, Reglamento de Recursos Humanos de la OIG, (OIG-RH-12) |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2024.

I.

El 17 de junio de 2019, la Oficina del Inspector General (OIG) y la Oficina de Administración y Transformación de los Recursos Humanos (OATRH), emitieron un Memorando Conjunto[1] sobre la transferencia de personal de auditoría interna a la oficina del Inspector General. El Memorando Conjunto informó a las entidades gubernamentales sobre el proceso de transferencia de personal de auditoría interna a la OIG. A tenor con los requerimientos de la OIG, durante el año fiscal 2019 y 2020 comenzó la transferencia por etapas de los empleados de las unidades de auditoría interna de las distintas entidades gubernamentales bajo la OIG. Simultáneo a la transferencia de empleados, la OIG se dio a la tarea de desarrollar

---

[1] Memorando Conjunto OIG-2019-002/ OATRH Núm. 2-2019.

su estructura organizacional, aprobar un *Plan de Clasificación y Retribución*, entre otras herramientas necesarias para su efectivo funcionamiento como agencia de nueva creación.

Conforme al plan, comenzó un proceso de conversión de puestos que consistió en adaptar la clasificación de los puestos transferidos para asegurar su correspondencia con el esquema de clasificación vigente en la OIG. Según la OIG, la conversión se llevó a cabo en el contexto de la realidad funcional y operacional, la estructura organizativa de la OIG, la cantidad de puestos necesarios para ejercer la supervisión, y la información obtenida del estudio de los expedientes del personal. En el proceso de conversión, el salario, plan de pensiones y beneficios de los empleados no se afectó adversamente.

Posteriormente, el 7 de julio de 2021, mediante Memorando Conjunto[2] la OIG y la OATRH anunciaron el proceso de clasificación y conversión de personal de auditoría interna en la OIG. En el mismo, la OATRH validó que la conversión de puestos de la OIG respondía al valor relativo de las clases en la estructura organizativa de la agencia. Por ello, el 8 de julio de 2022, la OIG notificó a la Oficina de la Procuradora de las Personas de Edad Avanzada (OPPEA) que el proceso de transferencia de personal de auditoría había comenzado tras la aprobación de la *Resolución Conjunta* del Presupuesto del Año Fiscal 2022-2023 por parte de la Junta de Supervisión y Administración para Puerto Rico, y que la transferencia física del personal sería efectiva al 1 de agosto de 2022.

Luego de hacer un informe relacionado a la conversión de los puestos transferidos de la OPPEA, las consultoras externas de las OIG recomendaron que el puesto de Auditor Principal ocupado por la Sra. Sheila T. Hodge Narváez (Hodge Narváez) en la OPPEA fuese convertido al puesto de Auditor en la OIG. El 3 de noviembre de

---

[2] Memorando Conjunto OIG-2021-004/OATRH Núm. 27-2021.

2022, la Oficina del Inspector General (OIG) envió una carta a la Sra. Hodge Narváez notificándole que en virtud del Artículo 11 de la Ley Núm. 15 del 28 de febrero de 2017, según enmendada, conocida como la *Ley del Inspector General de Puerto Rico*[3], su puesto como Auditora Principal en la OPPEA había sido convertido a un puesto de Auditora, un puesto de clasificación más baja, en la Oficina del Inspector General (OIG).  Además, fue informada que, debido a que su salario actual era mayor al de escala, no se vería alterado o afectado. Se le notificó, además, que tenía diez (10) días para solicitar reconsideración.

Con el propósito de prepararse para solicitar reconsideración, el 4 de noviembre de 2022, la señora Hodge Narváez envió un correo electrónico a la Sra. Mayra Rivera (Rivera), directora de Recursos Humanos de la OIG, solicitándole documentos e información relacionados a su puesto y al proceso de conversión del mismo. Entre los documentos solicitados, se encontraba la especificación de clase de los puestos de la agencia y la procedencia de las reclasificaciones interagenciales. Particularmente, el cambio de puesto que ocurrió en la clasificación del puesto de Auditor Principal en la OPPEA y el puesto de Auditor Senior en la OIG.

En respuesta, el 10 de noviembre de 2022, la señora Rivera le envió correo electrónico a la señora Hodge Narváez con los documentos solicitados. Sin embargo, se negó a enviar las copias de las especificaciones de clase de los puestos de procedencia del personal. La omisión de la información fue justificada en el hecho que, en esa etapa de los procedimientos, la información relacionada a terceros era considerada onerosa e impertinente.

El 17 de noviembre de 2022, la señora Hodge Narváez presentó una reconsideración.[4] Alegó que la conversión del puesto

---

[3] Ley Núm. 15-2017, 3 LPRA sec.8865.
[4] Solicitud de Reconsideración a la Determinación de Clasificación del Puesto de Auditor Principal de la Oficina del Procurador de las Personas de Edad Avanzada

de Auditor Principal de la OPPEA al puesto de Auditor de la OIG fue errónea. Señaló que los aspectos más significativos de la especificación del puesto de Auditor Principal que ejercía en la OPPEA eran más parecidos a los de la clasificación de Auditor Principal de la OIG que a los de Auditor.

El 21 de diciembre de 2022, la OIG presentó un *Alegato de la Parte Recurrida*. En el mismo, sostuvo que la complejidad de la clase de Auditor Principal en la OIG era superior a la clasificación de Auditor Principal de una agencia más pequeña, en este caso, la OPPEI. Esto, debido a que la OIG es la agencia encargada de auditar a todas las entidades del gobierno de Puerto Rico. De igual forma, esbozó que el proceso de conversión de los puestos surgió luego de analizar distintos criterios, no limitados al estudio de especificaciones de clase. Se tomó en consideración la necesidad de servicios, la realidad funcional y operacional, la estructura organizativa de la OIG, entre otros.

Luego de varias instancias procesales, el 21 de julio de 2023, la señora Hodge Narváez presentó una *Moción para que se Dicte Sentencia por las Alegaciones*. El 28 de julio de 2023, la OIG presentó una *Oposición a Moción para que se dicte Sentencia por las Alegaciones*. Arguyó que la *Moción* presentada por la señora Hodge Narváez era defectuosa e insuficiente debido a que carecía de hechos sobre los cuales no hubiese controversia acompañados de evidencia para sustentarlos.

El 8 de agosto de 2023, la OIG emitió una *Orden* concediéndole a las partes un término de treinta (30) días para reunirse y confeccionar un listado de hechos pertinentes sobre los cuales no hubiese controversia. De igual forma, ordenó que, en un término de veinte (20) días de celebrada la reunión, se le hicieran

---

como Auditor Bajo el Plan de Clasificación y Retribución Vigente para el Servicio de Carrera de la Oficina del Inspector General de Puerto Rico, de Manera que el Referido Puesto se Clasifique como Auditor Principal.

llegar las estipulaciones de hecho de cada parte y un alegato de derecho en apoyo a sus respectivas posiciones.

El 13 de septiembre de 2023, la OIG sometió una *Moción Informativa y en Solicitud de Orden* en la que comunicó que, debido a ciertos incidentes entre las partes y la imposibilidad de llegar a un consenso, solicitaban que se les eximiera de presentar una moción conjunta, y se les permitirá presentar sus respectivas solicitudes de resolución sumaria. En efecto, el 28 de septiembre de 2023, la OIG presentó una *Solicitud de Resolución Sumaria*. En la misma, desglosó los asuntos litigiosos en controversia y los que eran incontrovertidos, así como, el derecho aplicable.

El 9 de febrero de 2024, la OIG emitió una *Resolución Final* acogiendo la *Solicitud de Resolución Sumaria* de la OIG y declarando No Ha Lugar la *Solicitud de Reconsideración* de la señora Hodge Narváez. Posteriormente, el 26 de enero de 2024, el Oficial Examinador de la OIG presentó un *Informe para Resolución Sumaria* mediante la cual, declaró Ha Lugar la *Solicitud de Resolución Sumaria*. En el mismo, señaló que la señora Hodge Narváez había sido correctamente clasificada y ordenó el cierre y archivo de la *Solicitud de Reconsideración*.

En desacuerdo, el 11 de marzo de 2024, la señora Hodge Narváez acudió ante nos mediante *Solicitud de Revisión Judicial*. Plantea:

> **Primer Error:**
> ERRÓ LA OIG AL ACTUAR ARBITRARIA E ILEGALMENTE Y EN FORMA TAN IRRAZONABLE QUE INCURRE EN UN ABUSO DE DISCRECIÓN[.]
>
> **Segundo Error:**
> ERRÓ LA OIG EN SU DETERMINACI[Ó]N PUES SEGÚN SURGE DEL EXPEDIENTE ADMINISTRATIVO LAS ACTUACIONES DE LA AGENCIA NO CONSTITUYEN "CONVERSI[Ó]N DE PUESTO" SINO QUE CONSTITUYEN EN SU APLICACIÓN UN DESCENSO ILEGAL.

El 13 de marzo de 2024, emitimos *Resolución* concediendo plazo de treinta (30) días a la OIG para presentar su oposición. En esta misma fecha, la señora Hodge Narváez nos solicitó eleváramos el expediente administrativo. El 15 de marzo de 2024 así lo ordenamos. El 21 de marzo de 2024 la OIG presentó *Moción en cumplimiento de Orden* acompañada del expediente administrativo.

Por su parte, el 15 de abril de 2024, la OIG compareció mediante *Alegato en Oposición de la Parte Recurrida*. En síntesis, se mantuvo en que las alegaciones de la señora Hodge Narváez eran infundadas y que el proceso de transferencia de empleados se llevó a cabo mediante una metodología que fue consultada con la OATHR y que esta no informó reparo alguno al ejercicio realizado, validando así la transacción de conversión. Añadió que, la señora Hodge Narváez, a pesar de tener un puesto de Auditor Principal en la OPPEA, no tenía auditores a su cargo ni llevaba a cabo auditorias al nivel de un Auditor Principal de la OIG. Además, sostuvo que el salario de la empleada no se vio afectado y que inclusive fue mejorando debido a las enmiendas al Plan de Retribución de la OIG.

Luego de varias instancias procesales, el 6 de mayo de 2024, la señora Hodge Narváez presentó ante nos una *Reacción al Alegato de la Recurrida*. Arguyó que, en su puesto como Auditora Principal, no solo supervisó a los auditores de la agencia, sino que también a los monitores federales a cargo de garantizar el buen uso por parte de los recipiendarios de millones de fondos federales distribuidos por la agencia. Por esto, entendía que la reasignación de puesto hecha al puesto de Auditora de la OIG había sido un descenso ilegal.

Con el beneficio de la comparecencia de las partes, el expediente judicial, el Derecho y la jurisprudencia aplicable, resolvemos.

## II.

## A.

La OIG fue creada mediante la Ley Núm. 115-2017, con el propósito de fortalecer los mecanismos de prevención, fiscalización e investigación y auditoria de la gestión gubernamental; realizar auditorías y consultorías en las entidades gubernamentales dirigidas a lograr niveles óptimos de economía, eficiencia y efectividad de sus sistemas administrativos y de gestión de riesgos.[5] Control y dirección; hacer cumplir y sancionar las infracciones a las leyes, los reglamentos y la normativa adoptada por el Gobierno de Puerto Rico sobre la administración de los recursos y bienes públicos; y alcanzar con el mayor grado de seguridad posible, información confiable.[6]

Para cumplir plenamente con su función ministerial, se dispuso que La Oficina tendría plena autonomía administrativa, presupuestaria, operacional y fiscal, que le permitiera, sin que se entienda como una limitación, ejercer la custodia y el control de sus fondos y propiedad pública; diseñar y establecer su propia organización fiscal y los sistemas y procedimientos de contabilidad para llevar a cabo sus transacciones financieras; preparar, solicitar, administrar y fiscalizar su presupuesto; y reprogramar los fondos asignados o economías de acuerdo a las prioridades de las funciones que lleva a cabo la misma.[7] Esta, operará de forma totalmente autónoma e independiente, con capacidad plena para operar de forma continua, sin intervenciones externas, lo que le permitirá llevar a cabo su función ministerial efectivamente.[8]

Por otro lado, entre los poderes y funciones del Inspector General, se encuentra organizar, planificar, supervisar y dirigir los

---

[5] 3 LPRA § 8868.
[6] *Íd.*
[7] *Íd.*
[8] *Íd.*

trabajos de la OIG, se le concedió nombrar o contratar al personal que sea necesario para llevar a cabo las funciones y deberes que establecen la Ley 15-2017, de acuerdo a los criterios que aseguran la prestación de servicios de la mejor calidad.[9] Esta también está facultado para elaborar el plan estratégico anual de auditorías, evaluaciones e investigaciones a llevarse a cabo por la OIG y para adoptar normas internas para establecer su propio sistema de personal.[10]

A fin de lograr esos objetivos, el legislador dispuso para la transferencia a la OIG de personal, equipo, récords, entre otros. En cuanto al personal, el Artículo 11 de la ley establece que, se transfiere a la Oficina del Inspector general lo siguiente:

a) El personal, equipo, récords, documentos, activos, pasivos, contratos, propiedades, materiales y expedientes, así como los balances remanentes de fondos destinados a las unidades, divisiones u otros componentes que estén debidamente relacionados con la auditoría interna de las entidades gubernamentales no excluidas en el Artículo 4 de esta Ley.

b) Se ordena al Inspector General y a los secretarios, directores o jefes de las entidades gubernamentales cubiertas a adoptar todas aquellas medidas y realizar todas aquellas gestiones que estimen necesarias para asegurar la efectiva y adecuada transferencia del personal, equipo, récords, documentos, activos, pasivos, contratos, propiedades, materiales y expedientes transferidos mediante esta Ley.

c) El personal de la Unidad de Auditoría de la Corporación del Fondo de Seguro del Estado por ser única con certificación de representación exclusiva de la Junta de Relaciones del Trabajo de Puerto Rico estará exenta de ser transferidos a la Oficina del Inspector General.

De igual manera, estará exenta de ser transferidos a la Oficina del Inspector General la Unidad de Auditoria de la Autoridad de Carreteras.

Para ambas agencias, dichas unidades de auditoría interna estarán exentas de ser transferidas a la Oficina del Inspector General sus respectivos equipos, récords, documentos, activos, pasivos, contratos, propiedades, materiales y expedientes, así como los balances remanentes de fondos destinados a las oficinas y otros

---

[9] 3LPRA § 8872.
[10] *Íd.*

componentes que estén debidamente relacionados con las auditorías internas.[11]

En cuanto a la retención de estatus y derechos del personal, el Artículo 12 establece:

> El personal adscrito a las distintas unidades, divisiones u otros componentes de cada entidad gubernamental que se transfieren a la OIG retendrá, mientras ocupen el mismo puesto que ocupaban al momento de la transferencia, el mismo status que tenían conforme a la Ley 8-2017, conocida como "Ley para la Administración y Transformación de los Recursos Humanos en el Gobierno de Puerto Rico", según esta sea enmendada. Una vez se integren a la OIG, estarán sujetos a la reglamentación de personal que, a tales fines, adopte la misma. El personal transferido a la OIG, bajo las disposiciones de esta Ley, también retendrá todos los derechos, privilegios, obligaciones y status respecto a cualquier sistema de pensión, retiro, o fondos de ahorro y préstamo existente y al cual estuviesen afiliados al aprobarse esta Ley.[12]

B.

Nuestro ordenamiento jurídico reconoce la facultad de una autoridad nominadora para clasificar y reclasificar los puestos. El Tribunal Supremo de Puerto Rico ha reiterado que "la clasificación de puestos es una prerrogativa gerencial, ya que se trata de un instrumento para la administración de recursos humanos." En decir, la autoridad nominadora tiene una amplia discreción, aunque no absoluta para "determinar cuáles son los puestos necesarios para realizar la misión de la agencia y cuáles son las funciones a realizar y los requisitos que debe tener el incumbente de un puesto específico.[13] En virtud de lo anterior, la autoridad nominadora está facultada para identificar aquellos puestos que sean, o no, necesarios para garantizar el cumplimiento con el deber ministerial que recae sobre su agencia y para determinar las funciones que deben ejercer sus empleados. Esto, al amparo de las normas previamente aprobadas por ella a estos efectos y sin obviar el derecho que tiene un empleado a ser correctamente clasificado.[14]

---

[11] 3 LPRA §8875.
[12] 3 LPRA § 8876.
[13] *Mercado Vega* v. *UPR, 128 DPR 273*, 285 (1991).
[14] *Íd.*

C.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Núm. 38-2017, según enmendada,[15] establece nuestra facultad revisora sobre las decisiones emitidas por los organismos administrativos. Esta revisión judicial tiene como propósito limitar la discreción de las agencias y asegurarse de que desempeñen sus funciones conforme a la ley y de forma razonable.[16] En esta dinámica, las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo que las conclusiones e interpretaciones de los organismos administrativos especializados, merecen gran deferencia.[17]

El estándar de revisión de una decisión administrativa se circunscribe a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus acciones un abuso de discreción.[18] Al desempeñar esta función revisora, estamos obligados a considerar la especialización y experiencia de la agencia, diferenciando entre las cuestiones de interpretación estatutaria, área de especialidad de los tribunales, y las cuestiones propias de la discreción o pericia administrativa.[19]

En tal sentido, estamos facultados a determinar: (1) que el remedio concedido por la agencia fue el apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y

---

[15] 3 LPRA § 9601.

[16] *Ifco Recycling* v. *De Desperdicios Sólidos*, 184 DPR 712, 743 (2012).

[17] *Capó Cruz* v. *Junta de Planificación*, 204 DPR 581, 591 (2020); *Torres Rivera* v. *Pol. de Puerto Rico*, 196 DPR 606, 626 (2016); *Batista, Nobbe* v. *JTA. Directores*, 185 DPR 206, 212 (2012); *Ifco Recycling*, 184 DPR, pág. 744.

[18] *Capó*, 204 DPR, pág. 592; *Torres*, 196 DPR, pág. 626; *Ifco Recycling*, 184 DPR, pág. 745, citando a *Empresas Ferrer* v. *ARPE*, 172 DPR 254, 264 (2007).

[19] *Ifco Recycling*, 84 DPR, pág. 744; *Maranello et al.* v. *OAT,* 186 DPR 780, 792 (2012).

absoluta.[20] Sostendremos las determinaciones de hecho, en tanto y en cuanto obre evidencia suficiente en el expediente de la agencia para sustentarla.[21] En cuanto a las determinaciones de Derecho, tenemos amplia facultad para desplegar nuestra función revisora, pues, estamos en igualdad de condiciones para interpretar los estatutos.[22] Claro, ello no implica que podamos descartar libremente las conclusiones e interpretaciones de la agencia,[23] pues es norma reiterada que a toda determinación administrativa le cobija una presunción de regularidad y corrección.[24]

Esta presunción, apuntalada en el conocimiento especializado de la agencia, debe respetarse mientras la parte que la impugne no produzca evidencia suficiente para derrotarla.[25] Es decir, se presume que el organismo administrativo posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto con respeto y deferencia. Por ello, nuestra función revisora se circunscribe a evaluar la razonabilidad de la decisión recurrida, a la luz de las pautas trazadas por el legislador y el criterio de evidencia sustancial.[26]

### III.

En su primer señalamiento de error, la señora Hodge Narváez aduce que erró la OIG al actuar arbitraria e ilegalmente y en forma tan irrazonable que incurrió en un abuso de discreción. En su segundo señalamiento de error, sostiene que erró la OIG en su determinación ya que surge del expediente administrativo que las actuaciones de la agencia no constituyen una conversión de puesto,

---

[20] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, *págs.* 626-627; *Pagán Santiago et al.* v. *ASR*, 185 DPR 341, 358 (2012).
[21] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; *Ifco Recycling*, 184 DPR, *pág.* 744.
[22] 3 LPRA § 9675.
[23] *Batista*, 185 DPR pág. 217.
[24] *Capó*, 204 DPR, pág. 591; *Torres*, 196 DPR, pág. 627; Batista, 185 DPR, pág. 217.; *Ifco Recycling*, 184 DPR, *pág.* 744.
[25] *Torres*, 196 DPR, pág. 626; *Trigo Margarida* v. *Junta Directores*, 187 DPR 384, 393-394 (2012); *Batista,* 185 DPR pág. 215; *Ifco Recycling*, 184 DPR, pág. 744.
[26] *Batista*, 185 DPR, pág. 216; *Accumail P.R.* v. *Junta Sub. A.A.A.*, 170 DPR 821, 829 (2007); *Otero* v. *Toyota*, 163 DPR 716, 729 (2005); *Pacheco* v. *Estancias*, 160 DPR 409, 432 (2003).

sino que constituyen en su aplicación un descenso ilegal. No le asiste la razón en ninguno de sus planteamientos. Veamos.

Luego de hacer un estudio exhaustivo del expediente, no apreciamos la existencia de un descenso ilegal por parte de la agencia. De igual forma, no divisamos que la agencia haya actuado de forma arbitraria, ilegal o irrazonable. La reasignación de puesto surge como parte de un proceso de transferencias interagenciales en la OIG de los empleados que ocupaban puestos de Auditor Interno y personal adscrito a las divisiones de Auditoría Interna. Como parte del proceso, la OIG, junto con su equipo de consultoría, identificó las necesidades operacionales del área de trabajo y creó una estructura organizacional para atender las mismas.

Del análisis comparativo desglosado en el *Informe para Resolución Sumaria* de la OIG, en lo pertinente al puesto de Auditor y Auditor Principal, se establece que la diferencia más marcada entre ambos puestos era que el puesto de Auditor Principal se enfocaba en dirigir y supervisar las labores de una unidad de trabajo dedicada a intervenir, investigar, estudiar y auditar. De igual modo, era responsable de adiestrar y orientar auditores de menor jerarquía. No obstante, al momento de hacer la transferencia, la señora Hodges Narváez no llevaba a cabo labores características de su puesto. Por ejemplo, no tenía auditores a su cargo y no llevaba a cabo auditorias. La OIG estableció que para el año fiscal 2021-2022, la señora Hodges Narváez no realizó ninguna auditoría y por consiguiente no elaboró ningún informe de auditoría interna para dicho periodo fiscal.

Por otro lado, en el *Informe para Resolución Sumaria,* la OIG mencionó que existía una convergencia de labores entre ambos puestos, tales como: 1) los niveles de supervisión ejercida sobre auditores de menor jerarquía; 2) la capacidad de colaboración con los superiores y la supervisión que estos tienen sobre el puesto; y 3)

las responsabilidades asociadas a las tareas de auditoría. Asimismo, destacó que el Memorando Conjunto de la OIG y la OATRH estableció claramente que la conversión de puestos respondía al valor relativo de clases en la estructura organizada de la OIG, al esquema de clasificación vigente, las necesidades operacionales y de servicio, el presupuesto, los niveles de supervisión requeridos, a las tendencias en clasificación de puestos y a las normativas establecidas por la OATRH.

Ante este cuadro, y respetando la presunción de corrección por virtud de su conocimiento especializado, no podemos subvertir el criterio de la Agencia. La señora Hodge Narváez no ha producido evidencia suficiente para impugnar la determinación de la que recurre. Tampoco apreciamos arbitrariedad, ilegalidad o acto irrazonable, constituyente a un abuso de discreción, en la forma en que se hizo la conversión de Auditor Principal en la OPPEA a Auditor en la OIG.

IV.

Por todos los fundamentos expuestos, se *confirma* la Resolución Final de la OIG.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones