ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| | | |
|---|---|---|
| DR. MARCO A. DE JESÚS RUIZ<br><br>APELANTE<br><br>V.<br><br>DR. AGUSTÍN RULLÁN TORO, Y OTROS<br><br>APELADO | KLAN202400669 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm.: MZ2020CV00165<br><br>Sobre: Violación a la Ley de la Universidad de PR al Reglamento de la Universidad. |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece ante nosotros el Dr. Marco A. De Jesús Ruiz (Dr. De Jesús Ruiz; apelante) mediante el presente recurso de apelación y nos solicita que revoquemos la *Sentencia* emitida el 10 de junio de 2024, notificada el 12 de junio de 2024, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez (TPI). Mediante esta, el TPI desestimó por falta de jurisdicción la *Demanda* presentada por el Dr. De Jesús Ruiz contra el Dr. Agustín Rullán Toro (Dr. Rullán Toro; Rector del RUM), el Dr. Jorge Haddock Acevedo (Dr. Haddock Acevedo; Presidente de la UPR) y la Universidad de Puerto Rico (UPR) (en conjunto apelados).

Adelantamos que, por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado.

**I**

El Dr. De Jesús Ruiz presentó la *Demanda* de epígrafe el 6 de febrero de 2020, sobre reclamación laboral por violación a la Ley de la Universidad de Puerto Rico, al Reglamento de la UPR, a la Constitución del Estado Libre Asociado de Puerto Rico y daños y perjuicios.[1] Mediante

---
[1] Apéndice de la *Apelación*, pág. 1-5.

esta alegó lo siguiente: que había laborado por más de 15 años en el Departamento de Química del Recinto Universitario de Mayagüez (RUM) en donde ocupaba el puesto de Catedrático; que el 1 de marzo de 2019 fue notificado personalmente por el Dr. Enrique Meléndez sobre alegadas quejas en su contra por parte de unos estudiantes; que no se le notificó el asunto de la queja; que fue privado de una parte sustancial de su tarea académica sin su consentimiento, sin comunicación escrita y sin haberle dado la oportunidad de expresarse; que estas acciones tuvieron el efecto de enterar al estudiantado y a los profesores del RUM; que la acciones tomadas por la apelada excedieron el ámbito de la discreción del ordenamiento y resultaron en perjuicio de este; que el RUM no le notificó cuál fue el fundamento legal ni los hechos que justificaran la medida provisional tomada en su contra; que la Certificación Número 130, 201-2015 era inconstitucional por ser contraria al debido proceso de ley; que dicha Certificación no contempla la suspensión como medida provisional; que se incumplió con los términos establecidos en dicha Certificación para investigar los hechos alegados; que se creó una campaña de descredito en contra de este; que el 31 de octubre de 2019, la Dra. Betsy Morales Caro, Rectora Interina, le informó que no se encontró que hubiesen ocurrido actos de hostigamiento sexual hacia algún estudiante de su parte; y, que se le privó de su propiedad sin el debido proceso de ley. Por lo anterior, el Dr. De Jesús Ruiz solicitó lo siguiente: la restitución de la totalidad de su carga académica; que se le pagara la suma de $375,000.00 por los daños; y, que se le pagaran todos los ingresos dejados de percibir y todos los gastos legales en que incurrió.

El 21 de agosto de 2020, la parte apelada presentó su *Contestación a Demanda*.[2] A través de esta, la parte apelada negó la mayoría de las alegaciones presentadas en su contra y levantó sus defensas afirmativas.

---

[2] Apéndice de la *Apelación*, págs.6-11.

Luego de varios trámites procesales, el 5 de febrero de 2024, la parte apelada presentó una *Moción de Sentencia Sumaria*.[3] En síntesis, la parte apelada planteó lo siguiente: que no había controversia a los efectos de que el Dr. De Jesús Ruiz no agotó los procedimientos administrativos de la UPR; que la reclamación ante el TPI fue presentada fuera del término jurisdiccional aplicable; que la reclamación fue presentada ante el foro equivocado; que la mera alegación de que se violó un derecho constitucional no era suficiente para preterir el agotamiento del trámite administrativo; que el apelante se encontraba impedido de instar la reclamación en virtud de la doctrina de actos propios; que las medidas cautelares no constituyeron medidas disciplinarias, y por tanto, no activaron la protección del debido proceso de ley invocado por el Dr. De Jesús Ruiz; que se podía suspender al Dr. De Jesús Ruiz sin la necesidad de una vista informal previa; que el apelante no fue privado de sus tareas académicas y administrativas; que la reclamación del Dr. De Jesús Ruiz es contraria a la política pública; que los términos de la Certificación Núm. 130 son directivos, por lo que la alegada dilación del trámite investigativo no constituyó una violación al debido proceso de ley; que el "Memorando al Record" no constituyó una persecución en contra del demandante ni tampoco constituyó una acción irregular de la UPR; y, que el Presidente de la UPR y el Rector del RUM gozaban de inmunidad condicionada y que el apelante no contaba con evidencia de conducta intencional o de mala fe por parte de estos dos.

Por su parte, el 19 de marzo de 2024, el Dr. De Jesús Ruiz presentó su *Moción en Oposición a Moción de Sentencia Sumaria*.[4] En lo pertinente al caso ante nuestra consideración, este subrayó que no había remedio administrativo que agotar porque ni el Rector del RUM ni el Presidente de la UPR notificaron sus determinaciones conforme a derecho, es decir, por escrito y firmadas por ellos.

---

[3] Apéndice de la Apelación, págs. 1-525.
[4] Entrada Núm. 77 del expediente digital del Caso Núm. MZ2020CV00165 en el Sistema Unificado de Majeo y Administración de Casos (SUMAC).

El 22 de marzo de 2024, la parte apelada replicó la *Moción en Oposición a Moción de Sentencia Sumaria*.[5] Mediante esta, señaló que el Dr. De Jesús Ruiz incumplió con la Regla 36 de Procedimiento Civil, *infra*, toda vez que no discutió los hechos presentados por la apelada de manera individual y separada. Es decir, que no explicó de manera individual la razón por la cual sostuvo que existía controversia con relación a cada uno de ellos. En ese sentido, añadió que el Dr. De Jesús Ruiz no presentó argumento en derecho que pudiese derrotar el asunto medular de la moción dispositiva presentada por la apelada, a saber, que no se agotaron los remedios administrativos correspondientes antes de acudir al TPI.

Así las cosas, el TPI emitió una Sentencia el 10 de junio de 2024, en la cual declaró Con Lugar la *Moción de Sentencia Sumaria* presentada por la apelada toda vez que el Dr. De Jesús Ruiz no había agotado los procedimientos administrativos establecidos por la UPR y, además, por incumplir con la Regla 36 de Procedimiento Civil, *infra.* De este modo, el TPI se declaró sin jurisdicción para atender el presente reclamo y declaró No Ha Lugar la *Demanda* del caso de epígrafe.[6] Asimismo, el foro primario desestimó la *Demanda* del caso de epígrafe y en su dictamen, luego de examinados los escritos sobre sentencia sumaria y su oposición, así como los documentos que apoyan sus alegaciones y la prueba documental que obra en el expediente, encontró probados los siguientes hechos:

1. El sistema universitario conocido como "Universidad de Puerto Rico" fue creado por la Ley Núm. 1 del 20 de enero de 1966, según enmendada. Véase 18 LPRA sec. 601 *et seq* [.]
2. El sistema universitario de la U.P.R. está compuesto por: (i) la Junta de Gobierno; (ii) la Administración Central; (iii) sus unidades institucionales autónomas y no autónomas; y (iv) cualquier otra unidad o dependencia que la Junta de Gobierno cree en su momento.
3. El Recinto Universitario de Mayagüez (en adelante "R.U.M.") constituye una "unidad institucional autónoma" dentro del sistema universitario de la UPR.

---

[5] Apéndice del *Alegato de la Parte Apelada*, págs. 526-542.
[6] Apéndice de la *Apelación*, págs.116-129.

4. Como "unidad institucional autónoma", el R.U.M. disfruta de autonomía en toda gestión administrativa y académica dentro del recinto.

5. En términos generales, el sistema universitario se rige por un cuerpo de normas conocido como Reglamento General.

6. El Rector constituye "la máxima autoridad académica y administrativa dentro del ámbito de su particular unidad."

7. Por encima del Rector, se encuentra la figura del Presidente de la Universidad.

8. Entre los deberes y responsabilidades de cada Rector, figura el tener que "resolver las apelaciones que se interpusieren ante él contra las decisiones de los decanos."

9. A principios del año 2019, el R.U.M. contaba con una Rectora Interina, a saber, la Arquitecta Wilma Santiago Gabrielini, y más adelante ese mismo año, con el codemandado, el Dr. Agustín Rullán Toro, como Rector del RUM.

10. En todo momento relevante a la presente reclamación, el codemandado, el Dr. Jorge Haddok Acevedo, fungía como Presidente de la Universidad.

11. La Universidad cuenta con un Reglamento de Procedimientos Administrativos, Certificación Núm. 35, 2018-2019, según enmendada por la Junta de Gobierno.

12. El Artículo 4 del Reglamento de Procedimientos Administrativos, a través del mismo se "establece[n] las normas que regularán los procedimientos apelativos administrativos para adjudicar una apelación que interponga una persona o una entidad a una o más autoridades apelativas de la Universidad de Puerto Rico por decisión o resolución de una autoridad universitaria."

13. Las disposiciones del Reglamento de Procedimientos Administrativos son de aplicación: "a las apelaciones y reconsideraciones administrativas que se interpongan en la Universidad de Puerto Rico, incluyendo las apelaciones a las autoridades apelativas: rectores, Junta Universitaria, senados académicos, juntas administrativas, Junta de Retiro, presidente de la Universidad y Junta de Gobierno. Incluye también, las reglas y procesos de mediación de controversia.

14. El Artículo 9A del Reglamento de Procedimientos Administrativos establece que: "Serán apelables ante el rector, las decisiones tomadas por los decanos o cualquier otro funcionario que en el desempeño de sus funciones le responda directamente a éste. El rector entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por la decisión emitida por uno de los funcionarios antes mencionados."

15. El Artículo 9C del Reglamento de Procedimientos Administrativos aclara que: "El presidente entenderá y resolverá las apelaciones que interponga cualquier parte

interesada que se considere adversamente afectada por una decisión o resolución emitida por un rector o director."

16. El Artículo 9D del Reglamento de Procedimientos Administrativos establece que: "La Junta de Gobierno entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por una decisión o resolución emitida por el Presidente de la Universidad de Puerto Rico, la Junta Universitaria, la Junta de Retiro o la Junta de Apelaciones del Personal No Docente del Sistema Universitario."

17. El Artículo 13 del Reglamento de Procedimientos Administrativos establece que: "Una vez radicado un escrito de apelación, la autoridad apelativa o su representante designado podrá dictar las órdenes que entienda necesarias para la adecuada tramitación de apelación ante su consideración, incluyendo una orden para elevar el expediente del caso."

18. El Artículo 29 del Reglamento de Procedimientos Administrativos aclara que: "Cualquiera de las partes podrá solicitar la reconsideración de toda resolución u orden parcial o final, o parte de ella emitida por una autoridad apelativa dentro del plazo de veinte (20) días contados a partir de la fecha de notificación. Dicha autoridad apelativa decidirá en su discreción, si ha de reconsiderar su resolución u orden según solicitado, en cuyo caso así lo hará constar mediante notificación a las partes dentro del plazo de quince (15) días, a partir de la fecha de notificación en que se solicite dicha reconsideración. En ausencia de notificación alguna de las autoridades apelativas en que expresamente se haga constar su intención de reconsiderar, se entenderá rechazada de plano la solicitud. Estos trámites de solicitud de reconsideración no interrumpirán los plazos para solicitar apelación al foro correspondiente, excepto cuando estas autoridades apelativas decidan reconsiderar y así lo notifiquen a las partes."

19. El Artículo 29B del Reglamento de Procedimientos Administrativos provee para la revisión judicial ante el Tribunal de Apelaciones, pero solo ante determinaciones finales de la Junta de Gobierno.

20. La Universidad cuenta con una Política contra el Hostigamiento Sexual, Certificación Núm. 130 (2014-2015).

21. De conformidad a lo dispuesto en el Artículo IV(A) de la Política contra el Hostigamiento Sexual: "Toda persona que entienda ha sido objeto de actuaciones constitutivas de hostigamiento sexual en la Universidad de Puerto Rico podrá quejarse para que se investigue, de ser necesario, y se tome la correspondiente acción por parte de las autoridades universitarias. Esto aplica a la relación personal docente-estudiante, estudiante[-]estudiante, empleado-estudiante, empleado-empleado y supervisor

empleado o Certificación Núm. 130 2014-2015 Política Institucional Contra el Hostigamiento Sexual Página 6 viceversa, miembros de la comunidad, aspirantes a empleo o admisión a la Universidad. También, incluye a contratistas y visitantes en situaciones análogas a las mencionadas."

22. La Política contra el Hostigamiento Sexual establece un mecanismo inicial informal de investigación de querellas, seguido por uno formal, en la eventualidad de que se encuentre que existe causa para la radicación de cargos antes un oficial examinador nombrado por el Rector.

23. De conformidad a lo dispuesto en el Artículo IV(F) de la Política contra el Hostigamiento Sexual durante la etapa informal. "Se atenderá prioritariamente, en la medida que sea posible, los deseos, preocupaciones y el interés expuesto por la persona reclamante."

24. De conformidad a lo dispuesto en el Artículo IV(F) de la Política contra el Hostigamiento Sexual: "Si quien reclama fuera estudiante, deberá referir su queja a la Oficina del Procurador Estudiantil o al Decanato de Estudiantes."

25. De conformidad a lo dispuesto en el Artículo IV(G) de la Política contra el Hostigamiento Sexual:

"Con el propósito de proteger al reclamante y con la mayor prontitud, se podrán establecer medidas provisionales que sean posibles y convenientes, tales como: […] 3. Cualquier otra medida que bajo las circunstancias particulares del caso resulte necesaria. Estas medidas provisionales podrán ser tomadas motu proprio por los Rectores o Presidente o su representante autorizado, según sea el caso, o podrán solicitarse por las partes inmediatamente después de presentada la queja o querella[…]. Para la adopción de estas medidas se tomará en cuenta el interés de la persona reclamante. Estas medidas no constituirán una sanción disciplinaria contra la parte a la cual se le apliquen."

26. De conformidad a lo dispuesto en el Artículo IX(I) de la Política contra el Hostigamiento Sexual, durante la etapa del procedimiento informal: "Se le dará oportunidad a la persona contra quien se presenta una queja a ser informado sobre las alegaciones en su contra, exponer su posición y defensas. Disponiéndose, sin embargo, que en esta etapa de los procedimientos no se tendrá derecho a las garantías del debido proceso de ley reconocidas en los procedimientos formales. No obstante, podrá asistir a la reunión acompañada de abogado."

27. El Artículo IX (K) de la Certificación Número 130, 2014-2015 de la Junta de Gobierno de la Universidad de Puerto Rico lee de la siguiente manera:

*La investigación deberá iniciarse en un plazo de tiempo razonable, el cual no debe ser mayor de siete (7) días laborables para asegurar la pronta solución de la queja. En un plazo razonable, no mayor de quince (15) días laborables, salvo en circunstancias excepcionales, la oficina a cargo de la situación, según sea el caso, le*

*rendirá un informe a la autoridad nominadora con el resultado de la investigación y sus recomendaciones.*

28. El Artículo VII de la Certificación Número 130, 2014-2015 de la Junta de Gobierno de la Universidad de Puerto Rico lee de la siguiente manera:

Los procesos investigativos y los expedientes, tanto de la queja como de la querella, serán de *carácter confidencial.*

*Los expedientes de investigación se guardarán en un archivo específicamente designado para ello en la Oficina de Recursos Humanos, la Oficina del Asesor Legal, el Decanato de Estudiantes o la Junta Disciplinaria de cada unidad, según corresponda. Los informes rendidos deben permanecer en estos expedientes y no debe circularse copia de éstos a ninguna oficina de la Universidad, salvo en casos que se requiera la elevación del expediente como parte de un proceso apelativo. Una vez se notifique la determinación de la Autoridad Nominadora imponiendo la medida disciplinaria, el expediente y el informe de investigación no serán confidenciales y estarán sujetos a inspección, por cualquiera de las partes, previa solicitud escrita. No se podrá ofrecer información sobre querellas por hostigamiento sexual presentadas que estuvieran en la etapa de investigación o que hubiesen sido desestimadas o archivadas en cualquier etapa del procedimiento.*

29. La Universidad cuenta con una Oficina de la Coordinadora de Título IX. Entre otras cosas, la Oficina de la Coordinadora de Título IX procura: (i) por la implementación y cumplimiento de la política de hostigamiento sexual; (ii) orienta a las personas afectadas acerca de los procedimientos para presentar quejas y/o investigar los hechos alegados por la parte afectada; (iii) Vela por la integridad de la persona afectada; (iv) recibe y atiende quejas sobre situaciones de hostigamiento sexual; (v) coordina acomodos, cambios de clase, medidas de seguridad, y otras medidas de prevención en favor de la persona afectada; y (vi) provee información sobre los deberes y los derechos que le cobijan a los estudiantes y/o al personal bajo la protección del Título IX.

30. De conformidad a lo establecido en la Política de la Universidad de Puerto Rico sobre la Procuraduría Estudiantil, el RUM cuenta con una oficina de Procuraduría Estudiantil.

31. Entre las funciones de la Procuraduría Estudiantil se encuentran: (i) contribuir a la solución de problemas estudiantiles que resulten de conflicto con otros miembros de la comunidad universitaria o con instancias reglamentarias de la institución; (ii) complementar de manera ágil procedimientos establecidos reglamentariamente con el fin de atender, por la vía informal, situaciones conflictivas entre los estudiantes y los integrantes de la comunidad universitaria; (iii) procurar que los estudiantes reciban un trato justo y razonable en

sus relaciones con las autoridades y funcionarios universitarios, sirviendo como asesor, mediador, intercesor y conciliador entre los estudiante y los demás integrantes de la comunidad universitaria; (iv) servir de consultor con respecto a la planificación, el desarrollo o la implantación de normas o procedimientos que tienen impacto en la vida estudiantil; (v) recomendar cambios normativos o de prácticas, con el fin de mejorar la convivencia estudiantil; (vi) orientar, educar y asesorar activamente sobre los derechos, deberes y políticas institucionales; (vii) atender a cualquier miembro de la comunidad universitaria, siempre y cuando traiga una situación que tenga que ver con estudiantes o se relacione con la vida estudiantil; (viii) dar seguimiento para procurar que se resuelvan las situaciones; y (ix) atender reclamaos de represalias de las partes que reciban o participen de los servicios de la Procuraduría; entre otros.

32. En el año 1996, el demandante solicitó empleo en el RUM, y allá para enero de 2017, comenzó a trabajar como Instructor, mediante nombramiento temporero, en el Departamento de Química, Facultad de Artes y Ciencias del RUM.

33. Al presente, el demandante continúa siendo empleado de la Universidad, y ocupa el puesto de catedrático en el Departamento de Química de la Facultad de Artes y Ciencias del RUM.

34. El 16 de abril de 2019, la Oficina de la Procuradora Estudiantil le solicita a la Rectora Interina del RUM, Dra. Wilma Santiago Gabrielini, que se le permita a la estudiante Priscilla Soler Rodríguez, darse de baja administrativa de la clase que se encontraba tomando con el demandante. Ello, como "medida cautelar" tras la presentación de la querella de hostigamiento contra el demandante.

35. El 1 de marzo de 2019 el Dr. Enrique Meléndez dialogó personalmente con Dr. de Jesús Ruiz sobre las alegadas quejas de unos estudiantes y no le mencionó algún asunto que interpretarse como hostigamiento sexual.

36. Tal y como se desprende de la Minuta, así como de las alegaciones de la DEMANDA, durante dicha reunión no se discutió nada relacionado a las quejas de hostigamiento sexual, lo cual correspondía ser atendida conforme a los mecanismos específicos de la Certificación Núm. 130 y la Procuradora del Estudiante.

37. El 5 de marzo de 2019, la Procuradora Estudiantil, Larizza Hernández Nazario, y el Prof. Gustavo Cortina, Director de Calidad de Vida y Coordinador Título IX, notificaron que están atendiendo la investigación de hostigamiento sexual y recomiendan lo siguiente: "Que se asigne temporeramente a otro profesor para que ofrezca el curso de Química 3065 Sección 036 y los laboratorios de las secciones 062L y 066L."

38. La Rectora Interina, Dra. Wilma Santiago acogió dicha recomendación.

39. El 6 de marzo de 2019, Enrique Meléndez Martínez, Director del Departamento de Química, preparó un correo electrónico al Decano de Artes y Ciencias, resumiendo las gestiones que realizó para implementarlas medidas cautelares ordenadas por la Rectora del RUM.

40. Mediante carta fechada 18 de marzo de 2019, la Procuradora Estudiantil, Larizza Hernández Nazario, y el Director de Calidad de Vida/Coordinador Título IX, Prof. Gustavo Cortina Rodríguez, le indican por escrito al Dr. Enrique Meléndez Martínez, Director del Departamento de Química, lo siguiente: "Recomendamos que el profesor no tenga contacto alguno con el curso del cual fue asignado temporeramente a otro profesor, se recomienda al profesor que entregue todos los trabajos que han realizado los estudiantes, aunque no estén corregidos y se asigne un profesor y nuevos instructores del laboratorio para que corrijan los mismos."

41. El demandante desconocía que la Procuradora del Estudiante había solicitado una extensión del término para completar la investigación.

42. Durante el segundo semestre del año académico 2018-2019, la Universidad ajustó la carga académica de trabajo al mínimo de doce (12) créditos establecidos por Reglamento General.

43. La reunión informal con la Procuradora del Estudiante fue celebrada el 29 de marzo de 2019 a la 1:30 pm.

44. El demandante acudió el 29 de marzo de 2019 a la vista informal acompañado por su representante legal el Lcdo. George M. Uzdavinis Vélez.

45. Tal y como admitió el demandante durante la toma de su deposición, las preguntas realizadas durante la entrevista estuvieron relacionadas al asunto del alegado hostigamiento.

46. El 5 de abril de 2019, el demandante presentó una APELACIÓN ante el Presidente de la Universidad cuestionando la validez de la medida cautelar tomada el 6 de marzo de 2019.

47. Mediante carta del 3 de julio de 2019 al Dr. Agustín Rullán, Rector del Recinto Universitario de Mayagüez, la Procuradora Estudiantil, Larizza Hernández Nazario, y el Director de Calidad de Vida y Coordinador de Título IX, Prof. Gustavo Cortina Rodríguez, recomendaron, entre otras cosas, designar un oficial examinador.

48. Mediante carta del 16 de julio de 2019, el Dr. Agustín Rullán Toro, Rector del RUM, designa al Lcdo. Dixon Cancel Mercado, como "Oficial Examinador".

49. El 17 de julio de 2019, la entonces Directora Ejecutiva de la Universidad, Lcda. Soniemi Rodr[í]guez respondió a la APELACIÓN presentada por el demandante donde le indicó que era necesario que agotara los remedios administrativos antes de acudir a la presidencia.

50. El 12 de septiembre de 2019, el Lcdo. Dixon Cancel Mercado (Oficial Examinador), rindió el informe en donde encuentra que no hubo hostigamiento sexual.

51. El 31 de octubre de 2019, la Dra. Betsy Morales Caro, Rectora Interina, notificó al demandante que la autoridad nominadora acogió el Informe preparado por el Oficial Examinador y que habría de archivar la querella por alegado hostigamiento sexual en su contra.

52. La universidad sostiene como medida cautelar que el demandante no se acerque a una estudiante que se querelló en su contra toda vez que al verlo le provocó una crisis emocional según surge de la carta del 18 de noviembre de 2019.

53. Dicha medida le fue comunicada al demandante para la cual no presentó objeción según surge de carta fechada 22 de noviembre de 2019.

Inconforme, el 15 de julio de 2024, el apelante acudió ante este Tribunal de Apelaciones y nos señaló la comisión de los siguientes errores:

**Primer Error:** El TPI cometió un grave error manifiesto de derecho y abusó de su discreción al emitir una Sentencia Sumaria contraria a derecho en violación al debido proceso administrativo establecido por la propia parte apelada UPR en su Reglamento Sobre Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico, Certificación Número 35 (2018-2019) de la Junta de Gobierno de la UPR. Páginas 8-11.

**Segundo Error:** El TPI cometió un grave error manifiesto y abusó de su discreción al emitir una Sentencia Sumaria contraria a derecho en violación al debido proceso administrativo establecido por dicha parte apelada UPR al negarse a reconocer que es una norma de derecho administrativo reiterada que una vez la UPR ha promulgado un reglamento, viene obligada a observarlo estrictamente y no queda a su voluntad el reconocer o no los derechos que ella misma ha extendido a sus profesores. García Cabán v. UR, 120 DPR 167, 175 (1987) Páginas 11-13.

**Tercer Error:** EL TPI cometió un grave error manifiesto de derecho y abusó de su discreción al emitir una Sentencia Sumaria contraria a derecho en violación al debido proceso administrativo establecido por la propia parte apelada UPR en su Certificación Número 130, 2014-2015 de la Junta de Gobierno de la Universidad de Puerto Rico Paginas 13-17.

El 9 de agosto de 2024, la parte apelada presentó su *Alegato de la Parte Apelada*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo

procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 212 DPR 335 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). Se considera un hecho material aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Bobé et al. V. UBS Financial Services*, 198 DPR 6, 20 (2017). Asimismo, "resulta esencial que de la prueba que acompaña la solicitud de sentencia sumaria surja de manera preponderante que no existe controversia sobre los hechos medulares del caso." *Cruz Cruz v. Bella Group*, 2024 TSPR 47; 213 DPR __ (2024).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 335; *León Torres v. Rivera Lebrón*, *supra*, pág. 43. Para ello, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, *supra*, pág. 43.

La Regla 36.3 (e) de Procedimiento Civil, *supra*, dispone que una sentencia sumaria "será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 676 (2018).

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Fernández-Bernal v. RAD-MAN et al.*, *supra*, págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010).

La Regla 36.4 de Procedimiento Civil, *supra*, regula que ocurre cuando no se dicta una sentencia sumaria en su totalidad, sobre la misma expone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
> A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno.

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente de novo y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 338 que cita a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar

que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *Fernández-Bernal v. RAD-MAN et al., supra*; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

**B.**

Como se sabe, la doctrina de agotamiento de remedios administrativos constituye, junto a la jurisdicción primaria, una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento adecuado. *Igartúa de la Rosa v. A.D.T.*, 147 DPR 318, 331 (1998). En este sentido, la doctrina de agotamiento de remedios administrativos está recogida en la *Ley de Procedimiento Administrativos Uniforme del Gobierno de Puerto Rico* (LPAU), según enmendada, 3 LPRA sec. 9601 *et seq*. En específico, la Sección 4.2 de la LPAU establece que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
>
> .     .     .     .     .     .     .     .
>
> La revisión judicial aquí dispuesta será el recurso exclusivo para revisar los méritos de una decisión administrativa sea ésta de naturaleza adjudicativa o de naturaleza informal emitida al amparo de este capítulo. 3 LPRA sec. 9672.

De esta manera, es por medio de la adopción de la doctrina de agotamiento de remedios administrativos que se logra adelantar las siguientes consideraciones de política pública: (1) evitar la interrupción prematura del procedimiento administrativo; (2) permitir a la agencia administrativa desarrollar el trasfondo fáctico (*factual background*) que habrá de servir de fundamento a la decisión; (3) permitir que la agencia administrativa ejerza su discreción o aplique su conocimiento pericial

(*expertise*); (4) mejorar la eficiencia del procedimiento administrativo; (5) conservar los escasos recursos judiciales, debido a que la parte querellante puede resultar con éxito en la vindicación de sus derechos en el procedimiento administrativo, sin necesidad de intervención judicial; (6) darle una oportunidad a la agencia administrativa de descubrir y corregir sus errores; y (7) evitar el posible debilitamiento de la efectividad de la agencia administrativa, mediante la tramitación frecuente y deliberada de los asuntos que a éstas atañen, en el foro judicial. *Mercado Vega v. U.P.R.*, 128 DPR 273, 282-283, nota al calce núm. 4 (1991).

En consonancia, la Sección 4.3 de la LPAU dispone las excepciones a la doctrina de agotar remedios administrativos, como sigue:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673.

Por su parte, la Universidad de Puerto Rico contiene un *Reglamento Sobre Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico* (Reglamento). Este Reglamento regula lo concerniente a los procedimientos apelativos administrativos para adjudicar una apelación que interponga una persona, entidad o a las autoridades apelativas de la institución educativa por decisión o resolución de una autoridad universitaria. Artículo 4 del *Reglamento de Procedimientos Apelativos Administrativos de la UPR*, Certificación Núm. 35 (2018-2019). Asimismo, el Artículo 5 del Reglamento establece que aplicará a las apelaciones y reconsideraciones administrativas que se interpongan en la Universidad de Puerto Rico, el cual incluye: Rectores, Junta Universitaria, Senados Académicos, Juntas Administrativas, Junta de Retiro, Presidente de la Universidad y Junta de Gobierno. *Id.*

El Artículo 9 del Reglamento regula la jurisdicción de las autoridades apelativas y dispone que:

A. Apelaciones ante el Rector

**Serán apelables ante el rector, las decisiones tomadas por los decanos o cualquier otro funcionario que en el desempeño de sus funciones le responda directamente a éste. El rector entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por la decisión emitida por uno de los funcionarios antes mencionados**.

B. Apelaciones ante la Junta Universitaria

La Junta Universitaria entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por la decisión de una Junta Administrativa o un Senado Académico.

C. Apelaciones ante el Presidente de la Universidad

El presidente **entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por una decisión o resolución emitida por un rector o director**.

D. Apelaciones ante la Junta de Gobierno

**La Junta de Gobierno entenderá y resolverá las apelaciones que interponga cualquier parte interesada que se considere adversamente afectada por una decisión o resolución emitida por el Presidente de la Universidad de Puerto Rico, la Junta Universitaria, la Junta de Retiro o la Junta de Apelaciones del Personal No Docente del Sistema Universitario.** (Énfasis nuestro.) *Id.*

Además, una parte afectada podrá solicitar reconsideración según establece el Artículo 29A del Reglamento, como sigue:

Cualquiera de las partes podrá solicitar la reconsideración de toda resolución u orden parcial o final, o parte de ella emitida por una autoridad apelativa dentro del plazo de veinte (20) días contados a partir de la fecha de notificación. Dicha autoridad apelativa decidirá en su discreción, si ha de reconsiderar su resolución u orden según solicitado, en cuyo caso así lo hará constar mediante notificación a las partes dentro del plazo de quince (15) días, a partir de la fecha de notificación en que se solicite dicha reconsideración. En ausencia de notificación alguna de las autoridades apelativas en que expresamente se haga constar su intención de reconsiderar, se entenderá rechazada de plano la solicitud. Estos trámites de solicitud de reconsideración no interrumpirán los plazos para solicitar apelación al foro correspondiente, excepto cuando estas autoridades apelativas decidan reconsiderar y así lo notifiquen a las partes. *Id.*

Por último, Artículo 29 B del Reglamento provee para la revisión judicial ante el Tribunal de Apelaciones, pero solo ante determinaciones finales de la Junta de Gobierno. *Id.*

**III**

En su recurso apelativo, el apelante nos presentó tres (3) señalamientos de error por parte del foro primario. En esencia, la parte apelante señala en su primer error que el TPI incidió al determinar que existía un remedio administrativo que el Dr. De Jesús Ruiz debía agotar. En su segundo señalamiento de error, planteó que el TPI abusó de su discreción toda vez que debió reconocer que la UPR venía obligada a observar estrictamente su reglamento en cuanto a la medida cautelar tomada en atención a la reclamación de hostigamiento sexual en contra de este. Por último, señaló como tercer error que la UPR incumplió con el debido proceso de ley establecido por la UPR en su Reglamento 130, 2014-2015 de la Junta de Gobierno de la UPR. Solo discutiremos el primer señalamiento de error, el cual dispone del caso ante nuestra consideración porque nos priva de jurisdicción ante la falta de agotamiento de los procedimientos administrativos. Así pues, la decisión sobre este respecto hace innecesario el examen de los restantes errores.

Como bien reseñamos previamente, procede que el tribunal disponga sumariamente de un caso cuando **no exista una legítima controversia de hechos medulares, de modo que lo restante sea aplicar el derecho**. *Fernández-Bernal v. RAD-MAN et al.*, *supra*. Por tanto, no procede dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *Id.* Asimismo, como foro apelativo estamos llamados a "examinar el expediente de *novo* y verificar que las partes cumplieron con las

exigencias" pautadas en las Reglas de Procedimiento Civil. *Id*, pág. 338 que cita a *Rivera Matos et al. v. Triple-S et al.*, *supra*.

En el caso ante nuestra consideración, no existe controversia sobre el hecho de que el Dr. De Jesús Ruiz presentó una *Apelación* ante la Oficina del Presidente de la UPR en donde solicitó que se revocara la medida provisional tomada verbalmente en su contra por la Rectora Interina.[7] No obstante, la Oficina de Asuntos Legales de la Oficina del Presidente emitió un *Respuesta* a la *Apelación* del Dr. De Jesús Ruiz en donde determinó que conforme al *Reglamento de Procedimientos Apelativos Administrativos de la Universidad de Puerto Rico*, este debía agotar los remedios administrativos dentro de su unidad, y de entenderlo necesario, podía recurrir ante el Presidente de la Universidad una vez el Rector del RUM tomara una determinación final por escrito.[8] A pesar de lo anterior, la parte apelante decidió interponer una *Demanda* en el TPI, por lo que incumplió con el trámite administrativo y dejó al foro judicial sin jurisdicción para atender la causa de acción.

El Dr. De Jesús Ruiz, previo a interponer la *Demanda* del caso de epígrafe en el TPI, tenía disponible la solicitud de *Reconsideración* que establece el Artículo 29 del Reglamento de Procedimientos Apelativos Administrativos de la UPR, *supra*. Además, el Dr. De Jesús Ruiz podía acudir ante la Junta de Gobierno para revisar la decisión del Presidente de la UPR antes de acudir al TPI. Sin embargo, el Dr. De Jesús Ruiz optó por acudir ante el foro primario sin antes agotar los remedios administrativos que tenía disponibles. Así fue declarado por este en la deposición que se le tomó.[9]

Por todo lo anterior, examinada de *novo* la *Moción de Sentencia Sumaria* y la *Moción en Oposición a Moción de Sentencia Sumaria* y los documentos anejados, concluimos que procede confirmar la determinación

---

[7] Apéndice del *Alegato de la Parte Apelada*, págs. 519-522.
[8] Apéndice del *Alegato de la Parte Apelada*, págs. 523-524.
[9] Apéndice del *Alegato de la Parte Apelada*, págs. 79-80.

del TPI al declarar No Ha Lugar la *Demanda* del caso de epígrafe por la falta de agotamiento administrativo.

**IV**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones